ETHEL HAMILTON NAU, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROBERT B. NAU, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 28899, 57018. Filed March 27, 1957.

*Robert E. Steman, Esq.*, and *Reid F. Moore, Esq.*, for the petitioners.
*John J. Larkin, Esq.*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined deficiencies in income tax of the petitioners as transferees, as follows:

| Docket No. | Petitioner | Amount |
|---|---|---|
| 28899 | Ethel Hamiltion Nau | $21, 246. 21 |
| 57018 | Robert B. Nau | 8, 693. 73 |

The liability of Ethel has been settled by oral stipulation of the parties at the hearing to be $8,796.87, $7,245.38, and $655.13 for the years 1943, 1944, and 1945, respectively. The only question for decision is whether transferee liability was properly determined against Robert.

#### FINDINGS OF FACT.

The stipulated facts are so found and the stipulation is included herein by reference.

The petitioners are husband and wife. Ethel is the daughter of S. B. Hamilton, Sr., who died on January 9, 1946. His assets were distributed to five beneficiaries, including Ethel. This Court in the case of *S. B. Hamilton, Jr.*, T. C. Memo. 1954–224, affd. (C. A. 6) 232 F. 2d 891, determined that S. B. Hamilton, Sr., was liable for deficiencies in income tax of $8,796.87 and $7,245.38 for the years 1943 and 1944. Ethel concedes that she is liable as transferee of her father's estate in these amounts.

During the period pertinent to this proceeding, Ethel and Robert maintained three joint bank accounts at the Central Trust Company, Cincinnati, Ohio. These accounts consisted of a joint savings account and two joint checking accounts. The checking accounts are identified as a "regular" joint checking account and a "special" joint checking account.

On March 17, 1947, Ethel deposited $2,000 she received from her father's estate in the joint savings account maintained with Robert.

On October 31, 1947, the balance in the joint savings account totaling $2,181.13 (which included the above deposit by Ethel in the amount of $2,000) was transferred by the petitioners into their regular joint checking account. On this same date, Robert issued a check for $3,000 on the regular joint checking account as part payment on property owned by Robert.

On October 10, 1947, Ethel deposited $5,000 she received from her father's estate in the special joint checking account.

On January 21, 1948, Ethel also deposited $11,143.43 she received from her father's estate in the special joint checking account.

On various dates between October 17, 1947, and July 10, 1948, checks were issued on the special joint checking account of petitioners, transferring assets of Ethel to Robert in the total amount of $4,946.83.

On January 30, 1948, assets of Ethel in the amount of $1,500 were transferred to Robert through the issuance of a check on the special joint checking account of the petitioners to pay for stock owned by Robert in the Seyler-Nau Company, Cincinnati, Ohio.

On July 10, 1948, assets of Ethel in the amount of $62.20 were transferred to Robert through the issuance of a check on the special joint checking account of the petitioners to pay the premium of a life insurance policy owned by Robert.

On October 16, 1947, Ethel's assets, including those assets held in the joint checking accounts with Robert, totaled $6,617.47. As of such date, Ethel had received property as a distributee of her father's estate in the total amount of $7,000 and was liable for income tax deficiencies for such amount, plus interest, as a transferee of her father's estate.

On July 19, 1948, Ethel's assets totaled $3,524.10. As of such date, Ethel had received property as a distributee of her father's estate at least to the extent of $17,857.43. Also, as of such date she was liable for income tax deficiencies in the total amount of $16,697.38, plus interest, as a transferee of her father's estate.

No part of the income tax deficiencies owed by Ethel as a transferee of assets of her father's estate has been paid and no part of the income tax deficiencies of the transferor-taxpayer, S. B. Hamilton, Sr., has been paid.

#### OPINION.

The statute places the burden of proof upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer. Here the whole brunt of petitioner's argument is that the Commissioner has not carried his burden of proof.

As we study the record, however, we have no difficulty in finding that the stipulated facts, together with the testimony of the sole witness, a revenue agent who conducted the examination of the trans-

feree liabilities involved, establishes at least a prima facie case of transferee liability on the part of Robert. As we see it, the record establishes the facts as we have found them and the legal conclusions to be drawn therefrom.

The petitioners argue that no transfers from Ethel to Robert have been proven; that, if transfers are established, it is not proven that there was not adequate consideration; that the alleged transfers did not render Ethel insolvent; that no value of the alleged transfers was proven; that there is no proof that the Government has exhausted its remedies against Ethel; and that, in any event, the Commissioner has not established the extent of Robert's liability as transferee.

Except as to the last contention we think the Commissioner has made a prima facie case. Transfers from Ethel to Robert have been shown. They were transfers which ostensibly were of cash. At least they were bank deposit transfers and we perceive no reason why they should not be treated as cash transfers. What Robert spent the money for is of no consequence here. That they rendered Ethel insolvent also seems clear, taking into consideration the transferee liability for tax deficiencies of her father which she has admitted. *Scott* v. *Commissioner*, (C. A. 8) 117 F. 2d 36.

And viewing the record as a whole we think the Commissioner made reasonable efforts to collect the tax liability from Ethel. The Commissioner is not required to make what otherwise would be fruitless efforts to collect the tax liability from the previous transferee before first proceeding against the second transferee. See 9 Mertens, Law of Federal Income Taxation sec. 53.29, and cases cited. We think the record here shows that collection of the full tax liability of Ethel's father's estate could not have been accomplished by proceeding against her prior to this proceeding against her husband. This does not preclude the Commissioner from proceeding against Robert. *United States Trust Co. of New York*, 16 T. C. 671.

Robert and Ethel were husband and wife at the time the transfers set forth in the Findings of Fact were made. They were in court but did not testify. While evidence of lack of consideration for each transfer is not in the record, nevertheless the record as a whole shows that there was not consideration for the transfers. This is apparent from the findings relating to her assets.

Again, we think the Commissioner has made a prima facie case of transferee liability against Robert. The only troublesome point is the amount thereof. The liability was determined on December 29, 1954. The record shows that on July 19, 1948, Ethel's assets totaled $3,524.10. Presumably she still had assets in that amount when Robert's liability was determined. There is authority which would indicate that this amount should be subtracted from Robert's liability

in certain circumstances. *Anne Gatto*, 20 T. C. 830. Those circumstances do not exist here. If the $3,524.10 were so subtracted from the total deficiencies of $16,697.38, plus interest, due from her father's estate, there would still be a deficiency due far in excess of that charged against Robert.

We hold that the Commissioner has made a prima facie case of transferee liability against Robert in the amount claimed. The burden of going forward was thus shifted to Robert. He has not done so and has not answered or rebutted the Commissioner's case. The Commissioner in these circumstances must be regarded as having borne his burden of proof. *Fada Gobins*, 18 T. C. 1159, affd. (C. A. 5) 217 F. 2d 952.

*Decision will be entered under Rule 50.*