SIDNEY KREPS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 85290. Filed June 30, 1964.

*Morris A. Kaplan* and *Saul Goldstein*, for the petitioner.
*William F. Chapman*, for the respondent.

BRUCE, *Judge:* Respondent determined that petitioner is liable to the extent of $7,357.54 as transferee of assets of Metropolitan Air Freight Depot, Inc., for income taxes, additions to tax, and interest due from Metropolitan for the fiscal years ended February 28, 1951, February 29, 1952, and February 28, 1953.

The questions presented are:

(1) Whether petitioner is liable as a transferee to the extent of $7,357.54, or in any amount, for income taxes, additions to tax, and interest due from Metropolitan Air Freight Depot, Inc., for the fiscal years ended February 28, 1951, February 29, 1952, and February 28, 1953.

(2) Whether the assessment and collection of deficiencies in income taxes and additions to tax against Metropolitan Air Freight Depot, Inc., for the taxable years February 28, 1951, February 29, 1952, and February 28, 1953, are barred by the statute of limitations.

(3) Whether the assessment and collection of transferee liability asserted against petitioner are barred by limitations.

### FINDINGS OF FACT

Some of the facts have been stipulated and the stipulations, together with the exhibits attached thereto, are hereby adopted.

The petitioner, Sidney Kreps, filed individual income tax returns for the calendar years 1950 and 1951 with the collector of internal revenue for the first district of New York, and for the calendar year 1952 with the district director of internal revenue, Brooklyn, N.Y. Metropolitan Air Freight Depot, Inc., sometimes hereinafter referred to as Metropolitan, filed corporate income tax returns for the fiscal years ended February 28, 1951, and February 29, 1952, with the collector of internal revenue for the third district of New York, and for the fiscal year ended February 28, 1953, with the district director of

internal revenue, Upper Manhattan, N.Y. The returns for Metropolitan were filed on May 11, 1951, May 12, 1952, and October 19, 1953, respectively.

Metropolitan was organized in March 1949, pursuant to the laws of New York. Its business purpose was airfreight forwarding, i.e., consolidating and shipping packages by air. During the years involved, its business address was 315 West 36th Street, New York, N.Y. Its books and records were maintained and its returns were reported on a cash receipts and disbursements method of accounting.

The income tax returns filed by Metropolitan indicate there were 400 shares of capital stock outstanding at the end of each of the fiscal years involved. No stock certificates were issued by Metropolitan to any of its shareholders. The corporate return for the fiscal year ended February 28, 1951, states, without naming them, that there were three shareholders. The return for the fiscal year ended February 29, 1952, states there were two shareholders and shows Sidney H. Kreps as the owner of 25 percent of the outstanding capital stock and Bernard J. Kurtin as the owner of 75 percent of the capital stock. The return for the fiscal year ended February 28, 1953, states there were two shareholders but does not name them. Bernard J. Kurtin was president and Sidney H. Kreps was secretary and treasurer of Metropolitan during each of the fiscal years involved. Both Kurtin and petitioner signed the returns for the fiscal years ended in 1951 and 1952. The return for the fiscal year ended in 1953 was signed only by petitioner. Petitioner also traveled in the United States and abroad soliciting business for Metropolitan.

On June 27, 1958, a notice of deficiency was mailed to Metropolitan showing deficiencies in income tax for the fiscal years ended February 28, 1951, February 29, 1952, and February 28, 1953, in the total amount of $24,393.98 and additions to tax for each of said years in the total amount of $12,038.10. No petition was filed with the Tax Court by Metropolitan.

Forms 872, "Consent Fixing Period of Limitations Upon Assessment of Income and Profits Tax," were executed on behalf of Metropolitan and respondent and filed in the office of the district director of internal revenue, Upper Manhattan district, on February 3, 1956, and February 21, 1957, whereby it was agreed—

That the amount of any income, excess-profits, or war-profits taxes due under any return (or returns) made by or on behalf of the above-named taxpayer (or taxpayers) for the taxable year ended 2/28/53 under existing acts, or under prior revenue acts, may be assessed at any time on or before June 30, 1958,[1] except that, if a notice of a deficiency in tax is sent to said taxpayer (or taxpayers) by registered mail on or before said date, then the time for making any assessment as

[1] June 30, 1957, in the earlier form.

aforesaid shall be extended beyond the said date by the number of days during which the making of an assessment is prohibited and for sixty days thereafter.

Deficiencies in tax, additions to tax under sections 293(b) and 294(d) of the Internal Revenue Code of 1939, and interest were assessed against Metropolitan on November 28, 1958, as follows:

| Fiscal year ended— | Deficiency | Additions to tax, I.R.C. 1939 | | Interest |
| | | Sec. 293(b) | Sec. 294(d) | |
| --- | --- | --- | --- | --- |
| Feb. 28, 1951 | $16,606.86 | $8,303.43 | | $7,508.46 |
| Feb. 29, 1952 | 7,151.55 | 3,575.78 | | 2,804.34 |
| Feb. 28, 1953 | 635.51 [sic] | | $158.89 | 211.07 |

On March 2, 1959, a payment in the amount of $467.66 was applied toward the total amount due by Metropolitan for the fiscal year ended February 28, 1951. No other payments have been made of the amounts assessed against it and there remained owing and unpaid as of November 28, 1958, taxes, additions to tax, and interest due from Metropolitan for the fiscal years ended February 28, 1951, February 29, 1952, and February 28, 1953, in the aggregate amounts of $31,951.09, $13,531.67, and $1,005.47, respectively.

On November 25, 1959, respondent notified petitioner that he was liable to the extent of $7,357.54 as transferee of assets of Metropolitan for income taxes, additions to tax, and interest due from Metropolitan for the fiscal years involved.

During the years involved scheduled airline passenger tickets were purchased by Metropolitan and charged on its books of account to "Air Freight," as follows:

| Check No. | Date | Payee | Amount |
| --- | --- | --- | --- |
| (a) 1937 | June 5, 1950 | American Airlines | $1,380.00 |
| (b) 1938 | June 5, 1950 | Trans World Airlines | 1,380.00 |
| (c) 1945 | June 7, 1950 | Eastern Airlines | 919.56 |
| (d) 1946 | June 7, 1950 | United Airlines | 1,725.00 |
| (e) 1947 | June 7, 1950 | Capital Airlines | 834.35 |
| (f) 1948 | June 7, 1950 | Northwest Airlines | 1,548.50 |
| (g) 2191 | Oct. 4, 1950 | ___do___ | 676.09 |
| (h) 2601 | Feb. 20, 1951 | United Airlines | 4,057.20 |
| (i) 2602 | Feb. 20, 1951 | American Airlines | 1,545.05 |
| (j) 2615 | Feb. 27, 1951 | National Airlines | 1,199.22 |
| (k) 2616 | Feb. 27, 1951 | Trans World Airlines | 3,144.00 |
| (l) 3545 | Jan. 7, 1952 | ___do___ | 5,226.40 |
| (m) 3546 | Jan. 7, 1952 | United Airlines | 1,380.00 |
| (n) 3547 | Jan. 7, 1952 | American Airlines | 1,380.00 |
| Total | | | 26,395.37 |

None of the above tickets were used and the respective airlines subsequently issued refund checks in redemption thereof. The parties have stipulated that the refund checks received in redemption of said

airline tickets were deposited in personal bank accounts of petitioner, Rhoda Kreps (his wife), or Bernard Kurtin, as follows:

| Date | Sidney Kreps | Rhoda Kreps | Bernard Kurtin |
|---|---|---|---|
| July 3, 1950 | [1] $7,787.41 | | |
| Jan. 8, 1951 | | [2] $676.09 | |
| Mar. 23, 1951 | | | [3] $4,057.20 |
| Feb. 27, 1951 | [4] 1,236.04 | | |
| Mar. 21, 1951 | [5] 1,199.22 | | |
| Mar. 8, 1951 | [6] 3,144.00 | | |
| Feb. 6, 1952 | | | [7] 5,226.40 |
| Jan. 31, 1952 | [8] 345.00 | | [8] 1,035.00 |
| Jan. 24, 1952 | [9] 1,380.00 | | |

[1] 6 checks, items (a) to (f), inclusive of previous schedule, totaling $7,787.41, were deposited in the Special Checking Account of Sidney Kreps in Modern Industrial Bank. On the same date (July 3, 1950) Sidney Kreps issued his check on said account to Louis R. Kurtin in the amount of $7,787.41. The purpose of such transfer is not shown.

[2] Item (g) of previous schedule. The stipulation states "676.09 deposited to account of Mrs. Rhoda Kreps (wife of Sidney Kreps) in Kings County Savings Bank, Brooklyn on Jan. 8, 1951." The bank statement (Joint Exhibit 4-D) indicates this was a joint account of "Rhoda Kreps or Sidney Kreps (husband)" and that $687.09 was deposited on Jan. 3, 1951.

[3] Item (h) of previous schedule. 9 checks totaling $4,057.20 endorsed by Bernard Kurtin and checks totaling $3,184.20 deposited to his account in Chase National Bank.

[4] Item (i) of previous schedule. Deposited to Special Checking Account of Sidney Kreps in Modern Industrial Bank. Joint Exhibit 6-F shows an additional deposit of $309.01 was made in said account on Mar. 7, 1951.

[5] Item (j) of previous schedule. 2 checks of $599.61 each deposited in Special Checking Account of Sidney Kreps in Modern Industrial Bank.

[6] Item (k) of previous schedule. 6 checks in amount of $500 each, and one refund draft in amount of $144, deposited in Special Checking Account of Sidney Kreps in Modern Industrial Bank.

[7] Item (l) of previous schedule. One check issued by TWA, endorsed "For the account of Bernard Kurtin."

[8] Item (m) of previous schedule. U.A.L. issued 4 checks in amount of $345 each, 2 payable to Sidney Kreps and 2 payable to Bernard Kurtin. Kreps endorsed one of his to Kurtin and deposited one to his Special Checking Account in Modern Industrial Bank. Kurtin deposited 2 checks in his account in Chase National Bank and 1 check in his Special Checking Account in Modern Industrial Bank.

[9] Item (n) of previous schedule. 6 checks in total amount of $1,380 deposited in Special Checking Account of Sidney Kreps in Modern Industrial Bank.

On August 28, 1950, American Shippers, Inc., a California corporation, issued its check in the amount of $5,945 to petitioner, which petitioner deposited to his special checking account in the Modern Industrial Bank on September 1, 1950. There is no clear showing as to what this payment represented.

On April 18, 1951, Metropolitan issued its check charged to "Selling and Advertising" in the amount of $1,007.50 to the Chase National Bank which was used to purchase $1,000 in American Express traveler's checks, later used by petitioner on a trip to Europe in April 1951.

The income tax returns of Metropolitan show salaries paid petitioner for the fiscal years ending February 28, 1951, February 29, 1952, and February 28, 1953, in the amounts of $3,000, $3,128.50, and $1,228, respectively. For the calendar years 1950 and 1951, petitioner reported gross income in the amounts of $3,000 and $3,128.50, respectively, described as salary received from Metropolitan. For the calendar year 1952, petitioner reported gross income in the amount of $6,303.57, of which $2,119.50 was described as salary received from Metropolitan and $4,184.07 as salary received from American Shippers, Inc.

On May 9, 1957, a four-count indictment was issued against the petitioner, Sidney Kreps, and Bernard J. Kurtin, in the Southern

District of New York. On April 17, 1958, petitioner and Kurtin each pleaded guilty to counts 1 and 3 of this indictment, which charged them (1) with willfully and knowingly attempting to evade and defeat a large part of the taxes due and owing by Metropolitan Air Freight Depot, Inc., to the United States for the fiscal year ending February 28, 1951, by filing and causing to be filed with the collector of internal revenue for the third internal revenue district of New York, a false and fraudulent tax return of Metropolitan Air Freight Depot, Inc., in violation of section 145(b) of the Internal Revenue Code of 1939; and (2) with willfully and knowingly aiding and assisting in and counseling, procuring, and advising the preparation and presentation to the collector of internal revenue of a false and fraudulent tax return of Metropolitan Air Freight Depot, Inc., for the fiscal year ending February 28, 1951, in violation of section 3793(b)(1) of the Internal Revenue Code of 1939. On May 8, 1958, petitioner also pleaded guilty to charges of evasion of his income taxes for 1951 and evasion of his and his wife's income taxes for 1952.

Except for certain looseleaf ledger sheets covering accounts of Metropolitan from March 1, 1952, to April 1953, and cash receipts from March 1, 1952, to December 1952, and certain check stubs, the whereabouts of the original books and records of Metropolitan were unkown and were not available at the trial of the present case. The looseleaf ledger sheets mentioned are lacking in clarity and definiteness and in many respects confusing and inadequate. They appear to indicate total sales for the period March 1952 to February 1953, inclusive, in the amount of $180,585.85 and total expenses during said period in the amount of $190,159.26.

The income tax returns of Metropolitan indicate gross receipts and net taxable income (or loss) as follows:

| Year ending: | Gross receipts | Net taxable income (or loss) |
|---|---|---|
| February 28, 1951 | $182,027.00 | $1,366.55 |
| February 29, 1952 | 221,003.10 | 4,964.96 |
| February 28, 1953 | 181,485.55 | (8,584.23) |

According to the balance sheets attached to the returns of Metropolitan for each of the fiscal years in question, the corporation's assets exceeded its liabilities as follows:

| Year ending: | Amount |
|---|---|
| February 28, 1951 | $1,701.99 |
| February 29, 1952 | 10,985.34 |
| February 28, 1953 | 2,401.11 |

Taking into consideration the deficiencies in income tax (without consideration of additions to tax or interest) due and owing by Metropolitan for each of the fiscal years in question, in the amounts of $16,-

606.86, $7,151.55, and $635.51, respectively, the liabilities of the corporation exceeded its assets as follows:

| Year ending: | Amount |
|---|---|
| February 28, 1951 | $14, 884. 87 |
| February 29, 1952 | 12, 773. 07 |
| February 28, 1953 | 21, 992. 81 |

At least a part of the deficiency in the income taxes of Metropolitan for each of the fiscal years ending February 28, 1951, and February 29, 1952, respectively, was due to fraud with intent to evade tax, and the return filed by or on behalf of Metropolitan for each of said years was false or fraudulent with intent to evade tax.

The notice of transferee liability was timely as to each of the taxable years in question.

Petitioner was a transferee without consideration of assets of Metropolitan at least to the extent of $1,912.13 in the fiscal year ending February 28, 1951, and to the extent of $6,068.22 in the fiscal year ending February 29, 1952.

OPINION

The ultimate issue to be determined is whether petitioner is liable as a transferee to the extent of $7,357.54, or in any amount, for income taxes, additions to tax, and interest due from Metropolitan Air Freight Depot, Inc., for the fiscal years ending February 28, 1951, February 29, 1952, and February 28, 1953. Petitioner contends that he is not so liable for the reason that the assessment of deficiencies in income taxes and additions to tax against the alleged transferor, Metropolitan, for the fiscal years in question, was barred by limitations and, accordingly, the assessment and collection of transferee liability against petitioner for such taxes are barred by limitations. Assuming, for the purpose of argument, that it should be held the assessment against the transferor was not barred by limitations and that assessment against the transferee is likewise not barred, petitioner further contends he is nevertheless not liable as a transferee for the reason that respondent has failed to establish (1) that the amounts received by petitioner in redemption of the airline passenger tickets were without consideration; (2) that Metropolitan was insolvent at the time of the transfer of such assets or was rendered insolvent thereby; and (3) that he has exhausted his remedies against Metropolitan or its alleged successor, American Shippers, Inc.

We will first consider petitioner's contentions with respect to limitations, since, if well taken, that would dispose of this case and it would be unnecessary to consider petitioner's other contentions.

The taxable years of Metropolitan involved are the fiscal years ending February 28, 1951, February 29, 1952, and February 28, 1953. Its returns for these years due May 15 of each year (sec. 53, I.R.C. 1939)

were filed May 11, 1951, May 12, 1952, and October 19, 1953, respectively. Thus, the 3-year period provided by section 275(a) and (f) of the Internal Revenue Code of 1939 (sec. 6501 (a) and (b), I.R.C. 1954) for the assessment and collection of the deficiencies in the income taxes of Metropolitan expired May 15, 1954, May 15, 1955, and October 19, 1956, respectively, in each instance prior to June 27, 1958, the date the notice of deficiency was mailed to Metropolitan.

Section 276(a) of the Internal Revenue Code of 1939 (sec. 6501(c), I.R.C. 1954) provides, however, that in the case of a false or fraudulent return with intent to evade tax, the tax may be assessed at any time. Respondent contends that the returns filed by Metropolitan for the fiscal years ending February 28, 1951, and February 29, 1952, were false or fraudulent with intent to evade tax and, accordingly, there was no limitation on the assessment of the tax liability of Metropolitan for these years. We think respondent has sustained his burden (sec. 1112, I.R.C. 1939; sec. 7454, I.R.C. 1954) of establishing such fraud.

It has been stipulated that during the years in question airline passenger tickets were purchased by Metropolitan in the total amount of $26,395.37 and charged on its books of account to "Air Freight," an expense item. The passenger tickets were not used but were redeemed within a few days and the refund checks deposited in the personal bank accounts of petitioner, a joint account of petitioner and his wife, or of Bernard Kurtin. At least $15,767.76 of the passenger ticket refunds was deposited in the bank accounts of petitioner and his wife ($9,699.54 in the fiscal year ending February 28, 1951, and $6,-068.22 in the fiscal year ending February 29, 1952), and $10,318.60 was deposited in the personal bank accounts of Bernard Kurtin. Of the $9,699.54 deposited in petitioner's bank accounts in fiscal year ending February 28, 1951, $7,787.41 was transferred by petitioner to Louis R. Kurtin (a brother of Bernard) on the same day (July 30, 1950) it was deposited in petitioner's account. The reason for this transfer is unexplained. Since, however, the remaining amounts received by petitioner ($1,912.13 and $6,068.22) exceed the amount of transferee liability determined by respondent against petitioner ($7,357.54) we have chosen to ignore it.

The charging of the airline passenger tickets to "Air Freight," in itself a false representation, plus the failure to credit the amounts received in redemption of such tickets back to the corporation, is sufficient of itself to render the returns, filed by or on behalf of Metropolitan for these 2 years, false or fraudulent with intent to evade tax.

Petitioner contends, however, that the money received from the redemption of the airplane passenger tickets and deposited in the personal checking accounts of petitioner and Bernard was, to a large extent, used for the purpose of making payments to various employees

of trucking companies and airlines in order to generate business for Metropolitan; in other words as gifts or gratuities to induce such persons to direct shipments through Metropolitan, and that the amounts not so used constituted additional compensation to petitioner. Since this contention represents an effort on the part of petitioner to overcome the prima facie showing made by respondent, the burden of going forward is on petitioner. In our opinion the evidence does not support petitioner's contention in either respect.

In the first place, there is no showing of any agreement or obligation on the part of Metropolitan to pay petitioner any compensation in excess of the amounts reported in its income tax returns as set forth in our findings. Moreover, on his own income tax return, petitioner has not reported the receipt of any such additional compensation from Metropolitan.

As to the alleged gratuities, petitioner offered in evidence a schedule prepared by him listing aggregate amounts alleged to have been paid various employees or representatives of trucking firms and airlines. The amounts alleged to have been paid each individual employee are not shown. Also, a very large number of the employees are identified only by a nickname. Petitioner did not call any of the alleged recipients as his witnesses. On the other hand respondent called 15 of the persons listed and the testimony of 6 others was stipulated. Others were unavailable or were not identifiable. With few exceptions these witnesses denied receiving money from petitioner or Metropolitan though a number of them testified to receiving bottles of liquor or various articles of minor value, usually at Christmastime. Of the three who testified to receiving money, two testified to having received $5 to $10 at Christmastime and one stated he received $100 on Easter and $25 to $50 at Christmas. All denied receiving the amounts claimed by petitioner to have been paid them. In this connection, it is to be noted that on its return for the year ending February 28, 1951, the corporation claimed a deduction in the amount of $845 as Christmas gifts, and in the years ended in February 1952 and 1953 in the amounts of $98.50 and $31.20, respectively, as "Contributions or Gifts," without further explanation. These amounts appear ample to cover the gifts acknowledged as having been received by the witnesses in this case.

In connection with his contention regarding the giving of gratuities, petitioner testified that the practice of purchasing airplane passenger tickets, charging them to "Air Freight" expenses and then redeeming them, was engaged in, in order to avoid prohibitions of the Civil Aeronautics Board relating to rebates and unfair competition. This admission of a fraudulent predisposition toward the Civil Aeronautics Board, lends weight to our finding of a fraudulent intent in the filing of false returns by Metropolitan for the 2 years in question.

Moreover, the plea of guilty entered by petitioner on April 17, 1958, to two counts of a criminal indictment charging him with violations of sections 145(b) and 3793(b)(1) of the Internal Revenue Code of 1939 constituted a judicial admission that the return filed by Metropolitan for the fiscal year ending February 28, 1951, was false or fraudulent with intent to evade tax. *Leon Papineau*, 28 T.C. 54. The practices engaged in during the fiscal year ending February 29, 1952, were similar to those engaged in during the previous year. We have found and so hold that the return filed by or on behalf of Metropolitan for each of said years was false or fraudulent with intent to evade tax. Consequently the assessment and collection of the taxes and additions to tax due from Metropolitan are not barred by limitations.

Since there was no limitation for assessment against the taxpayer-transferor, the 1-year period provided by section 6901(c) of the Internal Revenue Code of 1954[1] (sec. 311(b), I.R.C. 1939), for assessment of transferee liability is inapplicable and there is no period of limitation for assessment of the transferee liability of the petitioner herein for the income taxes and additions to tax due from Metropolitan for the fiscal years ending February 28, 1951, and February 29, 1952. *Bartmer Automatic Self Service Laundry, Inc.*, 35 T.C. 317; *Smith* v. *Commissioner*, 249 F. 2d 218 (C.A. 5), affirming a Memorandum Opinion of this Court; *Ruth Halle Rowen*, 18 T.C. 874, reversed on other grounds 215 F. 2d 641 (C.A. 2).

With respect to the fiscal year ending February 28, 1953, the period of limitations for assessment of income taxes against Metropolitan was extended by consent (Forms 872) to June 30, 1958, and (notice of deficiency having been mailed to Metropolitan on June 27, 1958) for a period of 150 days (90 plus 60) thereafter, or until and including November 27, 1958. Accordingly the notice of transferee liability sent petitioner on November 25, 1959, was timely. Sec. 6901(c), I.R.C. 1954. For completeness sake, we might add that the fact that the transferor was not assessed until November 28, 1958, is immaterial insofar as the liability of the petitioner-transferee is concerned. *Park & Tilford*, 43 B.T.A. 348, 381–383.

Having found that the assessment and collection of transferee liability against the petitioner are not barred by limitations as to any of the years in question, we next consider petitioner's alternative contentions.

---

[1] SEC. 6901. TRANSFERRED ASSETS.

(c) PERIOD OF LIMITATIONS.—The period of limitations for assessment of any such liability of a transferee or a fiduciary shall be as follows:

(1) INITIAL TRANSFEREE.—In the case of the liability of an initial transferee, within 1 year after the expiration of the period of limitation for assessment against the transferor;

Respondent has the burden of proving the liability of petitioner as a transferee, i.e., he must establish all facts necessary to indicate liability, at law or in equity, on the part of the transferee. Sec. 6902(a) [2] and sec. 6901(a),[3] I.R.C. 1954. In order to sustain his burden here respondent must show by competent evidence (1) that $7,357.54, or some other amount, belonging to Metropolitan was transferred to petitioner without consideration; (2) that Metropolitan was insolvent at the time of, or rendered insolvent by, such transfer, or that the transfer was in fraud of creditors; and (3) that respondent has made every reasonable effort to collect the taxes from the transferor. *Bartmer Automatic Self Service Laundry, Inc., supra.*

On the basis of the evidence discussed above, we think it clear that at least $7,357.54 of the amounts received in redemption of the airplane passenger tickets in the fiscal years ending February 28, 1951, and February 29, 1952, was received and retained by petitioner without consideration. Certainly petitioner has not overcome the prima facie showing thereof made by respondent with respect to those 2 years. There is no showing herein, however, that any of such redemption money was received by petitioner during the taxable year ending February 28, 1953, and respondent has produced no evidence that petitioner received any other assets of Metropolitan during that year. Accordingly, transferee liability of the petitioner for the taxes due from Metropolitan for the year ending February 28, 1953, has not been established. This holding becomes unimportant herein, however, in view of our finding that petitioner did receive at least $7,357.54 of assets belonging to Metropolitan, without consideration in the 2 preceding years.

We next consider whether Metropolitan was insolvent at the time of, or rendered insolvent by, such transfers. Both parties consider this to be the most important issue in the case.

The resolution of this issue is made more difficult by reason of the fact that, except for certain incomplete and inadequate ledger sheets and check stubs, the whereabouts of the original books and records of Metropolitan was unknown and they were not available at the trial. This circumstance not only deprived petitioner of his right (sec.

---

[2] SEC. 6902. PROVISIONS OF SPECIAL APPLICATION TO TRANSFEREES.

(a) BURDEN OF PROOF.—In proceedings before the Tax Court the burden of proof shall be upon the Secretary or his delegate to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax.

[3] SEC. 6901. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

    (1) INCOME, ESTATE, AND GIFT TAXES.—

        (A) TRANFEREES.—The liability, at law or in equity, of a transferee of property,—

            (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes),

6902(b), I.R.C. 1954) to an examination of the taxpayer-transferor's books and records but it made respondent's task more difficult. The fact that petitioner was deprived of his right to examine such records is not, however, dispositive of the issue here. It merely necessitated the resort to other evidence, such as the balance sheets attached to the corporation income tax returns to which respondent has adverted, together with the facts stipulated regarding the purchase and redemption of the airplane tickets. Petitioner not only had access to such balance sheets but had the advantage of having prepared and signed the return of which they were an integral part. These balance sheets show the listings of assets and liabilities of the corporation, and the resulting excess of assets over liabilities as follows:

| | Beginning of fiscal year ending Feb. 28, 1951 | End of fiscal year ending— | | |
| --- | --- | --- | --- | --- |
| | | Feb. 28, 1951 | Feb. 29, 1952 | Feb. 28, 1953 |
| Assets (per Schedule L, Form 1120): | | | | |
| Cash | ($1,759.74) | ($688.61) | ³($4,968.84) | $606.38 |
| Accounts receivable less reserve for bad debts | 1,043.71 | 655.00 | | |
| Furniture and fixtures less depreciation | 447.53 | 496.94 | 884.56 | |
| Other | 863.72 | 1,550.57 | ³16,890.00 | 2,410.52 |
| Total assets | 595.22 | ¹2,033.90 | 12,805.72 | 3,016.90 |
| Liabilities: | | | | |
| Accrued expenses (taxes) | 234.78 | 311.91 | 1,427.43 | |
| Other | 5.00 | | 392.95 | 615.79 |
| Total liabilities | 239.78 | 311.91 | 1,820.38 | 615.79 |
| Total assets over liabilities | 355.44 | ²1,721.99 | 10,985.34 | 2,401.11 |

¹ Should be $2,013.90.
² Should be $1,701.99.
³ On its return for this year, the corporation, contrary to the ending figure shown on its return for the preceding year, showed cash on hand in the amount of $6,556.81, and "Other" assets were shown as $1,021.85 rather than $1,550.57, shown on the previous return.

It is well established that the transferee is retroactively liable for transferor's taxes in the year of transfer and prior years, and penalties (additions to tax) and interest in connection therewith, to the extent of the assets received from the transferor, even though the transferor's tax liability was unknown at the time of transfer. *Leon Papineau, supra; J. Warren Leach*, 21 T.C. 70; *Scott v. Commissioner*, 117 F. 2d 36.

Applying these principles, and taking into consideration the deficiencies in income tax (without consideration of the additions to tax or interest) due and owing by Metropolitan for each of the fiscal years involved, in the amounts of $16,606.86, $7,151.55, and $635.51, respectively, the liabilities of the corporation exceeded its assets as follows:

| Year ending: | *Amount* |
| --- | --- |
| February 28, 1951 | $14,884.87 |
| February 29, 1952 | 12,773.07 |
| February 28, 1953 | 21,992.81 |

We think it clear that Metropolitan, the transferor, was insolvent at the time of, or rendered insolvent by, the transfers in question.

Moreover, where, as here, a taxpayer has made a voluntary transfer of property without consideration at a time when the transferor had outstanding debts, the transfer, under New York law,[4] is presumptively fraudulent as to creditors and the burden falls on the transferee to establish that the transferor was not insolvent at the time of the transfer. *Leon Papineau, supra.* See also *Meyer Fried*, 25 T.C. 1241; *Louise Noell*, 22 T.C. 1035, also 24 T.C. 329; *William Wiener*, 12 T.C. 701; and *Bartmer Automatic Self Service Laundry, Inc., supra.*

Finally, we consider whether respondent has made every reasonable effort to collect the taxes due from the transferor. The deficiencies in question were determined against Metropolitan in June 1958. One payment (by whom made is not shown) in the amount of $467.66 was made on March 2, 1959, and the remaining amounts have remained due and unpaid since that time. We think it clearly apparent from the record presented that it would be utterly futile to proceed against Metropolitan. In fact, though not clearly shown, it is apparent that Metropolitan ceased operations in 1952 or 1953. Equity does not insist upon an idle formality as a prerequisite to proceeding directly against the transferee. *Coca-Cola Bottling Co. of Tucson*, 37 T.C. 1006, 1013 (appeal C.A. 9 dismissed Nov. 18, 1963); *Nau v. Commissioner*, 261 F. 2d 362 (C.A. 6), affirming with modification 27 T.C. 999.

Petitioner contends however, that the assets and liabilities of Metropolitan were acquired by American Shippers, Inc., in a stock-for-stock reorganization, and that respondent has taken no steps to recover from American Shippers, Inc. The short answer to this is that, other than the ambiguous self-serving testimony of petitioner, there is no evidence showing the manner in which Metropolitan is alleged to have been taken over by American Shippers, Inc.

*Decision will be entered for the respondent.*

---

[4] N.Y. Debt. & Cred. Law. sec. 273; *Feist* v. *Druckerman*, 70 F. 2d 333 (C.A. 2, 1934); *Capizzi* v. *Khoury*, 168 Misc. 490, 5 N.Y.S. 2d 201 (1938).