JOSEPH R. HUIE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent JOSEPH R. HUIE and MARY ANN HUIE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Huie v. Commissioner
Docket Nos. 595-75 596-75.
United States Tax Court
T.C. Memo 1977-151; 1977 Tax Ct. Memo LEXIS 291; 36 T.C.M. (CCH) 645; T.C.M. (RIA) 770151; May 18, 1977, Filed Joseph R. Huie, pro se. Frank Simmons, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions under section 6653(b) [1] as follows: Addition to Tax
Year
Income Tax
Under Sec. 6653(b)
Joseph R. Huie and
Mary Ann Huie [2]
1967
$28,423.84
$14,211.92
1968
38,936.12
19,468.06
1969
43,027.76
21,513.88
Joseph R. Huie
1970
70,824.75
35,412.38
Certain concessions have been made by respondent. The issues remaining for decisions are as follows: (1) Whether Joseph R. Huie understated his gross income from divorce *293 fees for the taxable years 1967, 1968, 1969 and 1970, and if so, whether the statute of limitations bars the assessment and collection of the deficiencies and additions to the tax as determined by respondent to be due for any of the taxable years in issue. (2) Whether any part of the underpayment of taxes for the taxable years involved in this proceeding is due to fraud, within the meaning of section 6653(b), on the part of petitioner. FINDINGS OF FACT Some of the facts have been stipulated.The stipulations of facts and the exhibits attached thereto are incorporated herein by this reference. At the time of the filing of the petitions herein, petitioners Joseph R. Huie and Mary Ann Huie were residents of Birmingham, Alabama.The petitioners filed joint Federal income tax returns for the years 1967 through 1969, inclusive, and petitioner Joseph R. Huie filed his Federal income tax return separately for the year 1970. All petitioners' returns during the years in issue were filed with the Internal Revenue Service Center, Chamblee, Georgia. Joseph R. Huie, hereinafter referred to as petitioner, began practicing law in Birmingham, Alabama, in 1944. He was disbarred from the *294 practice of law in Alabama on March 3, 1967, for participation in obtaining divorces in which petitioner knew or had reason to know that neither party was a bona fide resident of Alabama. However, after his disbarrment he continued to maintain his office under an arrangement with another attorney. Prior to and after his disbarrment petitioner's law practice consisted primarily of procuring divorce decrees for nonresidents of Alabama in collusion with Judge Robert Moore, Jr. Judge Moore was the Circuit Judge of the 25th Judicial Circuit of Alabama during the years 1967 through 1970. Petitioner's divorce practice involved primarily nonresidents of Alabama. When persons from out of state contacted petitioner's office seeking a divorce, a form letter was mailed to them. Papers were also sent for the other party to sign, agreeing to the divorce.The clients would then make arrangements to travel to Birmingham, Alabama, where the clients' sworn testimony was taken at petitioner's office before a Commissioner. A person from petitioner's office served as Commissioner during the years in issue. The final step in the procedure was preparation of the divorce decree, two copies of which *295 were certified and a certified copy given to the client. Petitioner's office staff certified the copies themselves with a rubber stamp signature of Judge Robert Moore, Jr., and Lois Brewer, Register, Circuit Court Winston County, Alabama. These items were found by United States Postal Inspectors in a search of petitioner's office on August 14, 1970. During March 1967, shortly after petitioner was disbarred, he reached an agreement with another Birmingham attorney, Mr. K. C. Edwards, whereby Mr. Edwards would perform certain services in connection with petitioner's divorce practice including interviewing clients and signing papers and be paid a specified fee per case. As part of this agreement there was an understanding that Mr. Edwards was not to proceed on any matter until the fee was paid. Under this arrangement petitioner continued to receive income from his divorce practice during each of the years 1967 through 1970. Mr. Edwards continued performing services for petitioner's divorce practice according to the aforementioned arrangement in collusion with Judge Moore.On or about May 3, 1969, the Alabama State Bar suspended Mr. Edwards from the practice of domestic relations *296 law. After his suspension from the practice of domestic relations law, Mr. Edwards continued to perform the same services in connection with petitioner's divorce practice as he had previously performed, except that he did not represent to the clients that he was their attorney and he did not sign any divorce papers as solicitor. From approximately mid 1966 until August of 1970, Mr. Allison, another Birmingham attorney, made approximately two or three trips a month to Hamilton, Alabama, to see Judge Moore on business. Prior to each trip Mr. Allison stopped at petitioner's office and received, either from petitioner or his secretary, a file folder containing divorce cases and an envelope containing money which Mr. Allison delivered to Judge Moore. The envelope had the words "Court cost" written on the outside and according to respondent contained $15 for each divorce file being delivered.Petitioner contends that each envelope contained $115. The "Court cost" money delivered by Mr. Allison to Judge Moore was received and routinely turned over to the Register of the Circuit Court of Winston County who issued the only receipts for the money based upon instructions from Judge Moore. *297 Postal Inspector W. F. Walsh, Jr., served a search warrant on Judge Moore on August 14, 1970, in connection with a mail fraud investigation. During the search of Judge Moore's office the postal inspectors found 2,529 divorce files which were dated during the years 1967 through 1970. Respondent eliminated 11 cases which did not have the names of any of petitioner's office staff on the papers signing as Commissioner. The number of files found in Judge Moore's office, which were processed by petitioner's office during the years in issue, were as follows: Year
No. of Divorce Files
1967
496
1968
571
1969
629
1970
822
2,518
In the statutory notices of deficiency issued to petitioner, respondent determined the number of cases handled by petitioner during 1967 through 1970, inclusive, to be 504, 572, 626 and 827, respectively. Recognizing the possibility that others may have been involved, respondent reduced the number of cases by one-half for 1967, 1968 and 1970, and the cases for 1969 to 313, leaving the following number of cases per year. Year
No. of cases
1967
248
1968
285
1969
313
1970
411
1,257
Based on the testimony *298 of petitioner's secretary, respondent determined the fee petitioner charged per case for 1967 and 1968 was $300 and $400, respectively, and $465 for 1969 and 1970. Applying the amounts to the number of cases determined results in the following gross receipts per year: Gross
Reduction at
Gross Year
Amounts $100 per case
Receipts
1967
$ 74,400
$24,800
$ 49,600
1968
114,000
28,500
85,500
1969
145,545
31,300
114,245
1970
191,115
41,100
150,015
For the year 1970, in his brief, respondent has reduced petitioner's gross receipts by $58,800 based on petitioner's testimony that he handled 245 cases for another attorney that year and received only $125 per case. Respondent now contends that petitioner's gross receipts for 1970 totaled $91,215. Based on the aforementioned figures, respondent now contends that petitioner understated his gross receipts from divorce fees for the years 1967 through 1970, inclusive, in the amounts of $23,383.00, $62,081.99, $82,834.55 and $56,278.33, respectively, as shown by the following schedule: Amounts Reported
Amounts of Year
Receipts
on returns
Understatements
1967
$ 49,600
$26,217.00
$ 23,383.00
1968
85,500
23,418.01
62,081.99
1969
114,245
31,410.45
82,834.55
1970
91,215
34,936.67
56,278.33
*299 Respondent also determined that the petitioner is liable for the additions to taxes for fraud pursuant to section 6653(b) in all taxable years in issue. On or about August 20, 1970, a Federal Grand Jury returned an indictment in seven counts charging petitioner with violations of Title 18, U.S.C., §§ 371 and 1341, conspiracy to defraud certain persons named in the indictment and mail fraud. The indictment arose out of petitioner's activities in his divorce practice. The case was tried on its merits in the United States District Court for the Northern District of Alabama after petitioner entered a plea of not guilty and the jury returned a verdict of guilty on each count of the indictment. During the taxable years 1967 through 1970, inclusive, petitioner fraudulently, with intent to evade tax, omitted $23,383.00, $62,081.99, $82,834.55 and $56,278.33, respectively, from his Federal income tax returns. OPINION Petitioner was engaged in the procurement of divorce decrees for nonresidents of the State of Alabama in collusion with Judge Robert Moore, Jr., and Mr. K. C. Edwards. In March 1967, petitioner was disbarred; however, except for arrangements *300 which he made with Mr. Edwards to perform certain functions in his place, petitioner continued his divorce practice after being disbarred. Ultimately, petitioner was tried and convicted of conspiracy and mail fraud arising out of his divorce practice. Petitioner alleged that the Court files relied upon, in part, by the Commissioner in determining the income tax deficiencies against him for the taxable years in issue were obtained illegally. Respondent introduced a valid search warrant issued on August 14, 1970, authorizing a search of the suite of offices occupied by Judge Robert Moore, Jr., in the Marion County Courthouse. Petitioner did not offer any evidence which would indicate the search was illegal. Accordingly, petitioner's contention is without merit. Nor was the Court persuaded with petitioner's argument that respondent was prohibited from proceeding with petitioner's audit and the determination of deficiencies in income taxes and additions to the tax while petitioner was in the custody of the Attorney General. Petitioner did not present, nor is the Court aware of any statute or case law in support of this argument. With respect to the issue of fraud, the burden *301 of proof is on the respondent and such proof must be clear and convincing. Section 7454(a); Kreps v. Commissioner,351 F.2d 1 (2nd Cir. 1965); affg. 42 T.C. 660 (1964); Rule 142, Tax Court Rules of Practice and Procedure. In sustaining the burden of proof, respondent is not required to prove the precise amount of the underpayment resulting from fraud, but only that "any part" of the underpayment is attributable thereto. Estate of Brame,25 T.C. 824 (1956); affd. per curiam 256 F.2d 343 (5th Cir. 1958). It appears from the record that respondent has sustained the burden of proof in establishing that petitioner omitted income with the intent to evade tax during all of the years in issue. Petitioner failed to report substantial amounts of income received from his illegal divorce practice during the years in issue and did not offer any credible explanation for such failure.The Court does not give credence to petitioner's claim that he omitted $100 per case from his reported income in the belief that the payments to Judge Moore were deductible business expenses. It is not necessary for this Court to decide whether petitioner *302 paid Judge Moore $100 per case as claimed by petitioner. Even if the fee per case was paid to Judge Moore, the additional $100 per case is not a deductible business expense and was taxable income to petitioner. Under Alabama law, it is bribery to give any judicial officer any gift, gratuity, or thing of value, with intent to influence his act, vote, opinion, decision, or judgment, on any cause, matter or proceeding. 14 Code of Alabama Section 63 (Michie 1959).It is further provided that it is bribery to give any money or thing of value to any judicial officer to influence him in the performance of any of his public or official duties.14 Code of Alabama Section 73 (Michie 1959). Section 162(c)(1) provides that there shall not be allowed as an ordinary or necessary expense of carrying on any trade or business, any payment made, directly or indirectly, to an official or employee of any government, if the payment constitutes an illegal bribe. Furthermore, the Court has held on numerous occasions that payments made to frustrate, declared and defined state policy are not properly deductible as business expenses. Wm. T. Stover Co. v. Commissioner,27 T.C. 434 (1956); *303 Clark v. Commissioner,19 T.C. 48 (1952). Since these alleged payments to Judge Moore were clearly illegal under state law and made to frustrate state policy they were not deductible as a business expense under section 162(a) from petitioner's income during the years in issue.On the other hand, if the payments were not made to Judge Moore, they were clearly includable in petitioner's income. In either event, income was intentionally omitted from petitioner's Federal income tax returns during each of the years in issue.Petitioner's lack of any credible excuse for omitting such income leads to the conclusion that petitioner omitted the income with the intent to evade tax. Accordingly, the Court sustains respondent's determination with respect to the fraud issue. Since the Court has found that the omissions of income were due to fraud, section 6501(c)(1) is applicable and the statute of limitations does not bar the assessment and collection of the deficiencies. This finding of fraud likewise supports the imposition of the addition to the tax in section 6653(b). As to the amount of the deficiencies, the burden of proof is on the petitioner to rebut the presumption *304 of correctness attached to respondent's determination. Welch v. Helvering,290 U.S. 111 (1933). Petitioner's uncorroborated testimony regarding his charging less per case than the figure used by respondent in computing the deficiencies, paying out most of each fee in disbursements and his failure to produce any billings, canceled checks, or books and records failed to meet the burden of proof. In his opening brief, respondent made certain concessions, reducing the amount of unreported income set forth in his notices of deficiency. Accordingly, the deficiencies and additions to the tax, as adjusted by respondent in his opening brief must be sustained. Decisions will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated. ↩
2. Respondent has conceded the liability of Mary Ann Huie for income tax deficiencies and additions to tax for the taxable years 1967, 1968 and 1969.↩