LEE OPTICAL ASSOCIATED COMPANIES PENSION PLAN & TRUST AND LEE OPTICAL ASSOCIATED COMPANIES PROFIT SHARING PLAN & TRUST, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lee Optical Associated Cos. Pension Plan & Trust v. Commissioner
Docket No. 38295-86.
United States Tax Court
T.C. Memo 1989-152; 1989 Tax Ct. Memo LEXIS 152; 57 T.C.M. (CCH) 43; T.C.M. (RIA) 89152; April 10, 1989
*152 Petitioners' transferor adopted a plan of liquidation pursuant to section 337 of the Internal Revenue Code of 1954. Held: The distribution of assets to petitioners pursuant to that plan was in their capacity as shareholders and not as creditors. Petitioners are therefore liable as transferees pursuant to section 6901. David A. Witts and Patricia M. Reed, for the petitioners. James R. Turton, for the respondent. WHITAKER
MEMORANDUM OPINION WHITAKER, Judge: By two separate statutory notices, each dated June 30, 1986, respondent determined liability for deficiencies and additions to tax against petitioners as transferees of the assets of Grayson Enterprises, Inc. (Grayson), and its wholly owned subsidiary Texas Key Broadcasting, Inc. (Key), as follows: Addition to Tax
Fiscal Year
Deficiency
Section 6653(b) [1]
3/31/77
$ 264,467.90
$ 130,746.92
3/31/78
337,553.84
188,776.92
3/31/79
105,991.04
52,995.52
3/31/80
509,396.07
254,698.04
3/31/81
304,686.54
152,343.27
There is no dispute concerning the liability of *153 Grayson and Key for the underlying deficiencies and additions to tax. [2] The sole issue is whether petitioners are liable as transferees of Grayson and Key pursuant to section 6901. This case was submitted fully stipulated pursuant to Rule 122. The stipulation of facts, supplemental stipulations of facts, and attached exhibits are incorporated herein by this reference. Petitioners are a pension plan and profit-sharing plan [3] qualified under the Employee Retirement and Income Security Act of 1974 (ERISA), section 3(3), 29 U.S.C. sec. 1002(3), for the benefit of eligible employees of Lee Optical, Inc. (Lee Optical), and its subsidiary, Dal-Tex. Petitioners' principal place of business was Dallas, Texas, at the time their petition was filed. *154 Collectively, petitioners have at one time had as many as 1,150 participants and assets of more than $ 10.5 million. Petitioners' trustees during the years in question were Charles Schropshire, Theodore Shanbaum (Shanbaum), and Ellis Carp (Carp); Shanbaum and Carp were majority shareholders in Lee Optical. Grayson's stock was owned equally by Shanbaum, Carp, and petitioners. During the years before the Court, Lee Optical was engaged in the manufacture and sale of optical products and operated approximately 150 stores in 19 states. Grayson was in the business of operating radio and television stations in Lubbock, Big Spring, and Monahans, Texas. On June 30, 1980, Grayson adopted a plan of complete liquidation pursuant to section 337. [4] That plan provided that after the provision for, or the payment of, the known debts and liabilities of the Corporation [Grayson], the officers of the Corporation are authorized and directed to distribute the remaining assets of the Corporation to the shareholders of record in the following manner: (1) with *155 respect to any cash, by distributing to each such shareholder of record a proportion of such cash equal to the proportion that the shares owned by such shareholder bears to the total issued and outstanding shares of this Corporation; and (2) with respect to assets other than cash, by distributing to each shareholder of record an undivided interest in each of such assets equal to the proportion that the shares of this Corporation owned by such shareholder bears to the total issued and outstanding shares of this Corporation; Pursuant to its plan, Grayson sold certain of its assets; $ 1.5 million of the sale proceeds was transferred to petitioners on July 21, 1980. Additional sales proceeds in the amounts of $ 300,000 and $ 200,000 were transferred to petitioners on July 23, 1980, and August 29, 1980, respectively. Identical distributions were made to Shanbaum and Carp. On June 30, 1981, a final distribution of an undivided one-third interest in all the assets remaining in the corporation was made to Shanbaum, Carp, and petitioners. They assumed Grayson's remaining liabilities which they immediately transferred, along with each of their one-third interests in Grayson's assets, to *156 a newly formed partnership, SCP. The net fair market value of petitioners' portion of the assets transferred in kind was $ 547,397.92. Among the assets which Grayson transferred to its shareholders was radio station KCCN-AM in Honolulu, Hawaii, and a microwave telecommunications system in western Texas. In 1980, the Department of Labor brought an action against Shanbaum, Carp, Glenn Auerbach, [5] Lee Optical, and Dal-Tex. The complaint alleged that petitioners' trustees breached their fiduciary duties by lending and transferring substantial amounts of petitioners' assets to Lee Optical and Dal-Tex. The litigation was concluded with a consent order dated September 24, 1981, whereby Oscar C. Lindemann was installed as petitioners' trustee and Shanbaum [6] was permanently enjoined from acting as a trustee for either petitioner. Dal-Tex was ordered to pay to the pension plan the sum of $ 102,406.31 which represented interest due and owing on debts incurred by Dal-Tex; payment was due six months from the date of the entry of the consent order. Dal-Tex was ordered to pay the profit-sharing *157 plan the sum of $ 1,058,986.07 which represented the balance of principal and interest on a note issued to the profit-sharing plan by Dal-Tex on June 28, 1974; payment of this sum was also due within six months of the entry of the consent decree. Should Dal-Tex fail to fulfill either of these obligations, Shanbaum and Carp were to be jointly and severally liable. Shanbaum and Carp proposed that they satisfy these obligations by transferring to petitioners their two-thirds interest in KCCN-AM and the microwave telecommunications system which they had contributed to SCP. Lindemann accepted the interests of Shanbaum and Carp in these assets on September 24, 1981, the date of the entry of the consent order. For purposes of the transfer of Shanbaum's and Carp's interests in the assets to petitioners, KCCN-AM was assigned a total value of $ 950,000, and the microwave system was assigned a value of $ 1,338,927. These values were assigned based solely on the representations made by Henry Klepak (Klepak), Shanbaum's counsel in the litigation giving rise to the *158 consent order. The difference between the total amount owed to petitioners under the consent order ($ 1,161,392.38) and the total amount deemed to have been paid by the transfer of the assets ($ 1,525,951.33), which was $ 364,558.96, was paid to SCP by the pension plan by check dated November 20, 1981. [7] None of the persons acting in any fiduciary or representative capacity with respect to petitioners had any prior experience with radio stations or telecommunications equipment. No contemporaneous appraisal of either asset was made. The transfer of these assets resulted in further litigation in the United States District Court for the Northern District of Texas by the Department of Labor against Shanbaum, Carp, Lindemann, and Klepak. In that litigation, it was found that the radio station and microwave system had been overvalued when transferred to petitioners, that the value of those assets in the hands of a tax-exempt entity such as petitioners was no more than $ 750,400 on the *159 date of the transfer, and that petitioners suffered an immediate loss of $ 775,551 as a result of such transfer. In its Findings of Fact and Conclusions of Law dated January 29, 1987, the court found that petitioners incurred operating losses attributable to the radio station and microwave system of $ 347,514 from May 1982 through March 1983. The court further found that petitioners had suffered a loss stemming from prohibited transactions with respect to their assets, [8] and that Klepak and Shanbaum had received unreasonable compensation. All these losses the court attributed to Lindemann's breach of his fiduciary duties and the knowing participation of Klepak and Shanbaum in that breach. All three individuals were held jointly and severally liable for payment of petitioners' losses attributable to the transfer of assets formerly held by Grayson which, including prejudgment interest, amounted to $ 2,083,628. [9] *160 On October 2, 1981, Lee Optical and its subsidiary Dal-Tex filed a petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. sec. 1101 (1982), et seq., in the United States Bankruptcy Court in the Northern District of Texas, Dallas Division. Petitioners were listed as creditors in the amount of $ 2,437,244.27. On the date of its liquidation, Grayson's books and records indicated a debt owed by Lee Optical in the amount of $ 6,998,261.66. Section 6901 does not in and of itself create or define any obligation. It is merely a procedural tool by which respondent, *161 as a creditor, can employ state law to enforce a taxpayer's liability against assets transferred without sufficient consideration to a third party when that transfer renders the taxpayer insolvent. See Commissioner v. Stern,357 U.S. 39 (1958); Dillman v. Commissioner,64 T.C. 797, 800 (1975). In this case, the relevant state law is section 24.03(a) of the Texas Business and Commercial Law Code Ann. (Vernon 1968) which states as follows: A transfer by a debtor is void with respect to an existing creditor of the debtor if the transfer is not made for fair consideration, unless, in addition to the property transferred, the debtor has at the time of transfer enough property in this state subject to execution to pay all of his existing debts. It is incumbent upon respondent to prove that the transfer of assets from Grayson to petitioners falls within section 24.03(a). Section 6902(a). However, upon a showing that a stockholder or stockholders have received assets of a corporation and that the taxes due the Government have not been paid, the burden of going forward shifts to the petitioner to show that he received them in some capacity other than as a stock holder and that he did not *162 receive them by virtue of his stock ownership. [Alexander v. Commissioner,27 B.T.A 1210, 1214 (1933).] [10]
It is undisputed that Grayson transferred assets to petitioners after which it was insolvent. Although certain liabilities were paid with proceeds of the sale of Grayson's assets, and others were transferred to the shareholders, Grayson had Federal income tax liabilities including additions to tax of $ 2,341,656.54. [11] Petitioners' only argument stems from their contention that Grayson and Lee Optical and their subsidiaries, all of whom were controlled directly or indirectly by Shanbaum and Carp, should be treated as one entity under Texas case law which allows piercing of the corporate veil in cases where the corporation is used "as a cloak for fraud or illegality or to work an injustice * * *." Gentry v. Credit Plan Corp. of Houston,528 S.W.2d 571, 575 (Tex. 1975). From this proposition follows petitioners' argument that the distribution from Grayson was in reality payment of the debt owed to petitioners by Lee Optical as set forth in the latter's petition for reorganization. We need not decide if Grayson and Lee Optical *163 are in reality one entity, since we are convinced on this record that the distribution from Grayson to petitioners was in the latter's capacity as shareholders of Grayson. The distribution at issue was pro rata among all Grayson's shareholders; the resolution adopting the section 337 plan provided that pursuant to the plan, each shareholder would receive "a proportion of such cash equal to the proportion that the shares owned by such shareholder bear to the total issued and outstanding shares of the Corporation * * *." Each shareholder was also to receive an undivided interest in any other asset equal to his proportionate share of stock. Petitioners owned one-third of Grayson's stock; on June 30, 1981, they received one-third of Grayson's cash on hand and a one-third interest in all of Grayson's other assets. Like the other Grayson shareholders, Shanbaum and Carp, petitioners received cash and an interest in other assets in the same proportion as their stock ownership. Petitioners have failed to convince us that *164 they received these assets as creditors. The parties have stipulated a number of facts concerning the litigation arising after the distribution. These facts are relevant only to the extent that they support petitioners' argument that Grayson and Lee Optical are the alter egos of one another, a position we need not examine because of our holding. To the extent such facts are relied upon to prove a valid debt on the part of Lee Optical or any of its principals, we note that any such debt arose after Grayson's distribution. Petitioners argue that they "certainly cannot be liable for any of Grayson's penalties attributed to fraud of which they are clearly blameless." Petitioners cite no authority in support of their position. The additions to tax found in Subchapter A of Chapter 68, including the addition to tax for fraud, "shall be assessed, collected, and paid in the same manner as taxes"; section 6662(a)(1); a transferee is liable for such additions in the same manner as the transferor. Estate of Glass v. Commissioner,55 T.C. 543 (1970), affd. 453 F.2d 1375 (5th Cir. 1972), (late filing, section 6651(a)(1)); Kreps v. Commissioner,42 T.C. 660 (1964), affd. 351 F.2d 1 (2d Cir. 1965), *165 (negligence, section 6653(a)); Rush v. Commissioner,T.C. Memo. 1985-65 (fraud, section 6653(b)). On brief, petitioners conceded Grayson's liability for an addition to tax for fraud pursuant to section 6653(b). We therefore are not faced with a failure of proof on the part of respondent. [12] Petitioners' argument in this regard, as well as petitioners' remaining contentions, are without merit. Accordingly, Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The deficiencies determined against Grayson are largely the result of the disallowance of deductions for fictitious administrative and advertising expenses charged by a company known as Dal-Tex. Funds were actually transferred from Grayson to Dal-Tex, but had no business purpose and were part of a scheme to transfer taxable income from a profitable company to an unprofitable one. The parties have stipulated the fraudulent nature of the arrangement.↩
3. Petitioners will be referred to individually as the pension plan and the profit-sharing plan in those instances where it is necessary to do so.↩
4. On the same date, Key adopted a similar plan, pursuant to which all its assets were transferred to Grayson.↩
5. Auerbach is a former trustee of petitioners. ↩
6. At the time the consent order was issued, Carp and Auerbach were no longer trustees.↩
7. On May 11, 1982, the pension plan paid the profit-sharing plan $ 107,546.22, representing the $ 102,406.31 which the profit-sharing plan was owed pursuant to the consent order plus interest of $ 5,139.91↩
8. Specifically, more than 10 percent of petitioners' assets consisted of a building which had been bought from, and leased back to, Dal-Tex, a party in interest as described in ERISA sec. 406(a)(1)(A), 29 U.S.C. sec. 1106(a)(1)(A) (1982)↩. 9. While the Secretary of Labor did not show to the district court's satisfaction that Lindemann's compensation was unreasonable as a matter of law, he was ordered to forfeit one-half of his total compensation to petitioners pursuant to the court's equitable powers. The salaries of Shanbaum and Klepak were found to be excessive and they were required to repay their compensation in full. Shanbaum was held individually liable for that portion of the judgment attributable to the prohibited transaction. Klepak was ordered to indemnify Lindemann for all sums paid by the latter. Carp's estate was ordered to indemnify Shanbaum and Lindemann.
10. See also Satnick v. Commissioner,T.C. Memo. 1978-289↩.
11. Federal tax liabilities are taken into account in determining a taxpayer's solvency for transferee liability purposes. See Adams v. Commissioner,70 T.C. 373, 389↩ (1978).
12. The burden of proof with respect to fraud is upon respondent. Section 7454(a); Rule 142(b).↩