Sylvia DOMAN, Harold Whellan and Estelle Whellan Bovino, as administrators of the Estate of Anna Whellan, deceased, Plaintiffs,

v.

Kenneth W. MOE, District Director of Internal Revenue, Defendant.

United States District Court
S. D. New York.

Dec. 29, 1959.

Geist, Netter & Marks, New York City, Netter & Netter and Sidney H. Zuckerman, New York City, co-counsel, for plaintiffs, George E. Netter, Milton Waxenfeld, New York City, of counsel.

S. Hazard Gillespie, Jr., U. S. Atty. for the S. D. of New York, New York City, for defendant. Myron J. Wiess, Asst. U. S. Atty., New York City, of counsel.

LEVET, District Judge.

This is a tax refund suit in which the plaintiffs, as administrators of the estate

of Anna Whellan, deceased, seek to obtain a refund of $86,004.16 collected from plaintiffs by defendant, District Director of Internal Revenue, as interest upon Anna Whellan's liability as transferee of assets of Meyer L. Whellan, her husband, also deceased, and of Whellkin Coat Co., Inc., through her husband. The defendant moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, 28 U.S. C.A. The plaintiffs filed a cross-motion for summary judgment.

The facts are as follows:

1. Plaintiffs allege that on or about March 14, 1958, the Director of Internal Revenue levied an assessment against the estate of Anna Whellan, deceased, in the amount of $53,940.25 tax, plus $26,970.12 penalty, or a total of $80,910.37, representing the liability of Anna Whellan, deceased, as a transferee of assets of Meyer L. Whellan, deceased, for income tax and penalty due from Meyer L. Whellan for the taxable years 1942, 1943 and 1944 (Complaint, paragraph Fourth).

2. Plaintiffs further allege that on or about March 14, 1958, an assessment was levied against the estate of Anna Whellan in the amount of $53,940.24 tax, plus $26,970.12 penalty, or a total of $80,910.-36, representing the liability of the estate of Anna Whellan as a transferree of assets of Meyer L. Whellan, transferee of assets of Whellkin Coat Co., Inc. for unpaid deficiencies in income, declared value excess profits, and excess profits taxes and penalty due from said Whellkin Coat Co., Inc. for the taxable years of 1942, 1943 and 1944 (Complaint, paragraph Fifth).

3. The complaint also states that on or about March 14, 1958, the defendant demanded payment of said assessments with interest thereon computed from January 15, 1945 to January 19, 1958, amounting to a total of $84,217.71 for interest (Complaint, paragraph Sixth).

4. The plaintiffs paid the District Director the sum of $161,820.73 for the two assessments of taxes and penalties (Complaint, paragraph Seventh).

5. On or about April 23, 1958, plaintiffs paid $7,475.77 to the District Director on account of the interest assessment and thereafter on or about August 18, 1958 the plaintiffs paid him $78,528.49, representing the balance of the interest claimed to be due plus additional interest, making total interest payments of $86,004.26 (Complaint, paragraph Eighth).

6. Plaintiffs filed a claim with defendant for the refund of the interest (Exhibit A, Complaint) stating as the reason therefor:

> "The taxpayer, a transferee of Assets, was not liable for interest upon the value of the transferred assets for the Period during which she held the assets where the value of the assets was less than the tax liability of the transferors. *Authority* W. B. Voss and Sarah L. Voss, v. Earl R. Wiseman, District Director (U.S. Court of Appeals, Tenth Circuit No. 5271, May 10, 1956)"

By letter dated November 26, 1958, defendant notified plaintiffs of the rejection of their claim for refund of interest (Exhibit B, Complaint) stating:

> "We refer to your claim for refund of interest in the amount of $86,004.26 for the fiscal years October 31, 1943 and October 31, 1944 filed in behalf of the Estate of Anna Whellan.
>
> "In the reasons under Item 9 on the Form 843 reference is made to a decision in the case of W. B. Voss and Sarah L. Voss V. Earl R. Wiseman, U. S. Court of Appeals Tenth Circuit, Number 5271, March Term 1956, May 10, 1956 in favor of the taxpayer.
>
> "The records in this office reveal that the aforementioned decision has not affected the method of computing interest on transferee assessments. Interest is still computed in accordance with established procedure.
>
> "In view of the foregoing your claim for refund is hereby rejected."

7. While denying knowledge or information sufficient to form a belief of the several amounts which were assessed as to tax, penalty and interest, the defendant admits the payments by plaintiffs of the sum of $161,820.73 for taxes and penalties under two transferee liability assessments and the sum of $86,004.26 for interest payments upon these two assessments.

8. Paragraph Ninth of the complaint alleges:

"The total amount received by plaintiffs' intestate, Anna Whellan, deceased, from Meyer Whellan and/or Whellkin Coat Co., Inc. for which she and her estate may be liable as a transferee as aforesaid, was less than the tax liabilities of said transferors and did not exceed $161,820.73, the amount of said assessments for taxes and penalty, without interest, which has been paid in full by the plaintiffs to the defendant, the District Director of Internal Revenue, and the plaintiffs have thereby fully discharged their liability and the liability of their intestate and her estate for any of the taxes owed by Meyer L. Whellan, deceased, and/or Whellkin Coat Co., Inc. * * * "

In the answer the defendant states:

"The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 'Ninth' of the complaint. * * * "

9. An audit statement accompanying a letter sent by Ellis A. Zacker, Associate Chief of the Appellate Division of the Internal Revenue Department, listed the value of the assets received by Anna Whellan, now deceased, during the year 1944 from Meyer L. Whellan, now deceased, at $161,820.73 (Affidavit of Theodore Present, Exhibit B).

10. The affidavit of Theodore D. Bennett, technical adviser with the Appellate Division of the Internal Revenue Service, New York Region, states:

"5. The files of the Internal Revenue Service indicate that Meyer Whellan transferred to Anna Whellan the additional sum of $160,213.28 during the year 1943.

"6. The above-mentioned exhibits attached to Mr. Present's affidavit correctly state the value of the assets received by Anna Whellan from Meyer Whellan in the year 1944 to be $161,820.73. For settlement purposes this figure was used in determining the transferee liability of the estate of Anna Whellan. However, the use of this figure for settlement purposes was in no way a concession that this was the maximum value of the assets transferred. * * * "

11. The settlement agreement is evidenced by letters from the Appellate Division, dated December 20, 1957 (affidavit of Theodore Present, Exhibits A and C). It is stated in each letter: "Your proposal for settlement of the tax controversy as evidenced by the signed agreement filed with this office has been accepted. There is enclosed a recomputation of the tax liabilities reflecting the conclusion reached. The deficiencies indicated therein bear interest as provided by law."

The recomputation referred to accompanying one of the letters (Exhibit B, affidavit of Theodore Present) contains the following statement:

"The value of the assets received by Anna Whellan, Deceased, during the year 1944 from Meyer L. Whellan, Deceased, amounted to $161,820.73. Inasmuch as the liability of Anna Whellan, Deceased, as a transferee of Meyer L. Whellan, Deceased, transferee of Whellkin Coat Co., Inc., transferor, is, for settlement purposes, $80,910.36 plus interest as provided by law, the liability of Anna Whellan, Deceased, transferee of Meyer L. Whellan, Deceased, transferor, is limited to $80,910.37 plus interest as provided by law.

"The conclusions of the Appellate Division, New York City Region, in

connection with the proposal for settlement of the tax and penalties in controversy are the basis for the revised transferee liability shown in this statement."

The recomputation accompanying the other letter (Exhibit D, affidavit of Theodore Present) bears a similar statement except that the liability in question there is that of "Anna Whellan, Deceased, as transferee of Meyer L. Whellan, Deceased, transferee of Whellkin Coat Co., Inc., transferor."

These agreements are in the amount of $80,910.37 and $80,910.36 respectively (second affidavit of Theodore Present, Exhibits M and N). These amounts include tax and penalty of the transferor. Additional provisions on the reverse side of each agreement are made part of the agreement. The provisions on the reverse side of the first agreement (Exhibit M–1 of the second affidavit of Theodore Present) are as follows:

"This represents the liability of the Estate of Anna Whellan, deceased, as a transferee of assets of Estate of Meyer L. Whellan, Deceased, * * * for income tax and penalty due from said Estate of Meyer L. Whellan, Deceased, for the taxable years ended December 31, 1942, 1943 and 1944."

The provisions on the reverse side of the second agreement (Exhibit N–1 of the second affidavit of Theodore Present) states that it represents the liability of the estate of Anna Whellan as a transferee of assets of the estate of Meyer L. Whellan, transferee of assets of Whellkin Coat Co., Inc. for the taxable years ended October 31, 1942, 1943 and 1944.

The Tax Department accepted the settlement set forth in the agreement (Exhibits A and C of affidavit of Theodore Present). However, the government's position is "[T]hat the Appellate Division entered into a compromise based on the 1944 transfers in no way precludes proof of the 1943 transfers in this action." (Defendant's memorandum of law, p. 20)

Despite this position the government states that "[T]he issue in this case is whether transferees are liable for interest on transferred assets when this results in transferee liability in excess of the value of the transferred assets." (Defendant's memorandum of law, p. 3)

The cross-motion of the plaintiffs for summary judgment will be discussed first.

■ The assessment underlying this action is authorized by Title 26 U.S.C.A. § 6901. This section provides for the direct assessment of taxes predicated upon transferee liability. The courts have recognized that the section neither creates nor defines a substantive liability but provides merely a new procedure by which the government may collect taxes. See Commissioner of Internal Revenue v. Stern, 1958, 357 U.S. 39, 42, 78 S.Ct. 1047, 2 L.Ed.2d 1126.

■ The statute providing for transferee liability assessments makes no provision for interest. The question of interest payments has been decided with reference to the total value of the assets received by the transferee. See Robinette v. Commissioner of Internal Revenue, 6 Cir., 1943, 139 F.2d 285; Buzard v. Helvering, 1935, 64 App.D.C. 268, 77 F.2d 391; Voss v. Wiseman, 10 Cir., 1956, 234 F.2d 237.

The plaintiffs rely on the case of Voss v. Wiseman, 10 Cir., 1956, 234 F.2d 237 as the basis for their motion for summary judgment. The facts of the Voss case were as follows:

On July 1, 1942, an Oklahoma corporation transferred all its assets, subject to outstanding liabilities, to a Delaware corporation of the same name. On June 20, 1945, all of the assets of the Delaware corporation were distributed to its stockholders. At the time of the distribution, the Delaware corporation had filed income tax returns for all of the years in which it had conducted the business of the corporation and had paid the full amount of taxes shown to be due on its returns. After the distribution, the Commissioner of Internal Revenue made

an investigation in which it was determined that the corporations owed $51,-711.93 in federal taxes, plus interest, for the taxable years 1941 through 1945. On April 6, 1948, the Commissioner notified the plaintiffs of the deficiency and the determination that each of them was liable, as transferees, to the extent of the value of the assets distributed to them. The liability of the plaintiffs, as transferees, was determined to be $12,-927.99 each. The Collector of Internal Revenue made demand upon the plaintiffs for the liability and the sum of $5,-308.98 as interest. Each plaintiff paid the $12,927.99, but refused to pay the interest. Following an unsuccessful attempt by plaintiffs to restrain collection of these amounts, the interest was then paid and suit brought when claims for refund were denied.

The District Court held that the transferee was liable for interest from the date the assets were received.

The Court of Appeals unanimously reversed. Judge Pickett said (at pages 239–240):

"Upon these facts, the question is limited to that of the liability of the transferees to the United States for interest upon the value of the transferred assets for the period during which the transferee held the assets when that value is less than the tax liability of the transferor.

\*　\*　\*　\*　\*　\*

"The statute does not require the transferee to respond in interest except that which is due from the transferor. That is, if the transferee has received sufficient assets, he is liable not only for the delinquent tax of the transferor but also for the accrued interest. There is no liability on the part of the transferee in law or equity to pay the value of the assets until there has been a determination of the deficiency and notice thereof. 30 Am.Jur., Interest, § 46. The transferee does not owe the tax deficiency and could not pay the value of the transferred

assets until there had been a determination and notification of the taxpayer's deficiency. The liability of a transferee being limited to the value of the assets received, the right of the Commissioner to interest must be predicated upon the theory of damages for delay in making payment. 15 Am.Jur., Interest, §§ 159, 160; Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361; United States v. United Drill & Tool Corp., 87 U.S. App.D.C. 236, 183 F.2d 998. \*　\*　\*"

It is obvious that the Voss case, supra, contemplates a situation where the value of the transferred assets is less than the tax liability of the transferor. The court there had stated:

"\*　\*　\* That is, if the transferee has received sufficient assets he is liable not only for the delinquent tax of the transferor but also for the accrued interest. \*　\*　\*" 234 F.2d at page 240.

It is not clear from this case what the value of the transferred assets were. The settlement agreement between the plaintiffs and the defendant did not purport to determine the total value of the assets transferred to Anna Whellan, deceased, during the taxable years ending 1942, 1943 and 1944. The government had claimed that Meyer L. Whellan transferred the sum of $160,213.28 to Anna Whellan during the year 1943 and the sum of $161,820.73 during the year 1944 (Affidavit of Theodore D. Bennett).

The plaintiffs disputed these amounts and a settlement was reached based upon the amount claimed to have been transferred in 1944 (see Exhibits B, D, M–1, N–1).

While this agreement determined the liability, for settlement purposes, of the estate of Anna Whellan, deceased, for income tax and penalty due, there is no indication that interest had been discussed. In the recomputations accompanying the letters sent by Ellis L. Zacker, Associate Chief of the Appellate Di-

vision of the Internal Revenue Department (Exhibits B and D) it is stated that the liability is limited to $80,910.36 "plus interest as provided by law."

In the affidavit of Theodore D. Bennett, technical adviser with the Appellate Division of the Internal Revenue Service, New York Region, sworn to November 13, 1959, Mr. Bennett states:

> " * * * For settlement purposes this figure was used in determining the transferee liability of the estate of Anna Whellan. However, the use of this figure for settlement purposes was in no way a concession that this was the maximum value of the assets transferred. * * *
>
> " * * * The attempt to use this settlement figure to establish as a fact the maximum value of the transferred assets is a complete perversion of the understanding arrived at between the Appellate Division and the attorneys and accountants for the estate of Anna Whellan."

From the foregoing it is plain that it cannot be said that there is no genuine issue of fact here. In any event, the Voss case, supra, would not be applicable unless the value of the transferred assets is shown to be less than the tax liability of the transferor. For the purpose of this motion it is not necessary to examine the validity of the Voss case.

It has been held that "where there is even the slightest trace of a factual issue a trial must be ordered." Purofied Down Products Corp. v. Travelers Fire Insurance Company, D.C.S.D. N.Y.1959, 171 F.Supp. 399, 400. See also Bozant v. Bank of New York, 2 Cir., 1946, 156 F.2d 787; Weisser v. Mursam Shoe Corp., 2 Cir., 1942, 127 F.2d 344, 145 A.L.R. 467.

It seems significant that the plaintiffs have not submitted affidavits in support of the motion. There is no claim by them that the value of the transferred assets was less than the tax liability of the transferor. The affidavit of Theodore Present does not purport to be based on personal knowledge. See Rule 56(e), Federal Rules of Civil Procedure.

The status of the plaintiffs also bears examination. In Voss v. Wiseman, 10 Cir., 1956, 234 F.2d 237 the court had stated:

> " * * * The transferee does not owe the tax deficiency and could not pay the value of the transferred assets until there had been a determination and notification of the taxpayer's deficiency. * * * " At page 240.

The defendant points out that these plaintiffs are the children of Anna and Meyer L. Whellan, they are the administrators of the estates of both Anna and Meyer L. Whellan and have acted in that capacity since June 19, 1945. Under these circumstances, the defendant maintains that for the thirteen-year period the transferor and transferee have been one and the same. With the granting of interest a discretionary matter, the status of the plaintiffs is also in issue.

The Court of Appeals for this circuit has pointed out the great care which trial judges should exercise in granting motions for summary judgment. Doehler Metal Furniture Co. v. United States, 2 Cir., 1945, 149 F.2d 130. See also Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464; United States v. Manufacturers Casualty Insurance Co., D.C. S.D.N.Y.1957, 158 F.Supp. 319.

In accordance with the reasoning of those cases, the motion of the plaintiffs for summary judgment must be denied.

Defendant's motion for judgment on the pleadings must also be denied. The defendant states that the court may grant interest as a matter of discretion (p. 19 of defendant's memorandum of law) and there are facts in issue which would have bearing on the exercise of that discretion. See discussion on plaintiffs' motion for summary judgment.

The motion and cross-motion are denied in all respects.