**Sidney KREPS, Petitioner,**

**v.**

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

**No. 431, Docket 29304.**

United States Court of Appeals
Second Circuit.

Argued May 19, 1965.

Decided Sept. 21, 1965.

Rehearing Denied Oct. 26, 1965.

Martin D. Cohen, Morris A. Kaplan, New York City, for petitioner.

Mark S. Rothman, Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, for respondent.

Before WATERMAN, MARSHALL* and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge:

Sidney Kreps petitions to review a decision of the Tax Court holding him liable under the transferee provisions of the 1939 Internal Revenue Code for unpaid income taxes of Metropolitan Air Freight Depot, Inc.

Metropolitan was organized in March 1949, pursuant to the laws of New York. Its business was air freight forwarding.

---

* Judge Marshall heard oral argument and participated in the decision in this case, voting to affirm. He resigned to become Solicitor General of the United States before he could formally concur.

It received shipments from various manufacturers, consolidated them, and shipped them by air to various customers. One Bernard J. Kurtin was President of Metropolitan, petitioner Sidney H. Kreps was both Secretary and Treasurer, and they were its principal stockholders. The corporate books and records were maintained and the tax returns filed on a cash receipts and disbursements method of accounting.

Metropolitan apparently ceased operating in 1953. Since that time its affairs have been the subject of several tax controversies. At some point all the original books and records of the company disappeared.[1] The documentary evidence that remains are certain loose leaf ledger sheets that the lower court termed both "confusing and inadequate," a few check stubs, and the corporate income tax returns that were filed during the years in question. The absence of the original books and records complicates several of the issues in the case, but this absence does not make it impossible fairly to decide the questions petitioner raises, for we wish to stress that on this record neither party can be blamed for the disappearance.

On June 27, 1958, a notice of deficiency was mailed to Metropolitan showing deficiencies in income tax for its fiscal years ending February 28, 1951, February 29, 1952, and February 28, 1953. These totaled $24,393.98. Additions to tax amounted to another $12,083.10. No petition was filed in the Tax Court, and on the 28th of November 1958, the deficiencies, additions to tax, and interest were assessed against Metropolitan. Except for one payment of $467.66, paid to reduce the amount due from Metropolitan for the fiscal year ending February 28, 1951, the liability of Metropolitan remained unsatisfied. The Commissioner finally concluded that Metro-

---

1. The petitioner alleges that he delivered the books to an Assistant United States Attorney in 1958 and that they were never seen again. No finding was made by the Tax Court as to the reason for the disappearance of the books.

politan was unable to satisfy its liability and notified petitioner that the Commissioner considered him a transferee of property once owned by Metropolitan and considered him liable for a certain portion—$7,357.54 to be exact—of the deficiency due and owing from Metropolitan.[2] The petitioner then contested this determination of his liability in the Tax Court.

Petitioner's first contention is that the applicable statute of limitations barred the assessment of the tax against Metropolitan. Section 275(a) of the 1939 Internal Revenue Code[3] states that the income taxes imposed by chapter one of the Code must be assessed within three years after the required return is filed. If section 275(a) applies here petitioner would prevail for the Commissioner mailed the notice of the deficiency to Metropolitan on June 27, 1958, more than three years after Metropolitan filed its returns for the fiscal years ending February 28, 1951 and February 29, 1952.[4] But section 275(a) is qualified by section 276(a) of the 1939 Internal Revenue Code.[5] which allows the Commissioner to assess the tax "at any time" if the return for the year in question is "false or fraudulent" and filed "with intent to evade tax." So if Metropolitan filed false and fraudulent returns with intent to evade taxes due for those fiscal years the Commissioner's assessment of the tax in 1958 was timely.

█ The interaction of sections 275(a) and 276(a) represents a compromise between conflicting public policies. On the one hand, of course, there is good reason to provide that after a determinate period of time citizens can rest assured that their tax returns will not be reopened by zealous tax officials. On the other hand, the skillful deception of some taxpayers and the limited investigative resources of the government make it certain that some fraud will go undetected for more than three years after a return is filed. The Code therefore states that the tax may be assessed at any time if a taxpayer files a false or fraudulent return with intent to evade tax. But in order to insure that this provision does not eviscerate the policy of repose embodied in section 275(a) special rules concerning the burden of proof have been adopted. Section 1112 of the 1939 Internal Revenue Code[6] states that in a proceeding involving the issue of fraud with intent to evade tax, the burden of proof with respect to the issue of fraud is on the Commissioner. And many courts have added the further requirement that this burden is not satisfied unless the Commissioner proves fraud by "clear and convincing evidence." See, e. g., Bryan v. Commissioner of Internal Revenue, 209 F.2d 822 (5 Cir. 1954), cert. denied, 348 U.S. 912, 75 S.Ct. 289, 99 L.Ed. 715 (1955).

The Tax Court decided that the returns filed by Metropolitan for the fiscal years here in question were false and fraudulent with intent to evade tax, and that the tax payable for these years could be as-

---

2. The Commissioner contended that the petitioner was liable under the transferee provisions of the 1939 Internal Revenue Code. Int.Rev.Code of 1939, § 311(a) (1). Now Int.Rev.Code of 1954, § 6901 (a) (1) (A). The transferee provisions impose no new obligation on the transferee of property of a taxpayer; they merely allow collection from him by a summary procedure of his existing liability in law or equity. See generally 9 Mertens, The Law of Federal Income Taxation §§ 53.01–.55 (Zimet ed. 1958).

3. Now Int.Rev.Code of 1954, § 6501(a).

4. The Commissioner asserted deficiencies for the fiscal years ending February 28, 1951, February 29, 1952, and February 28, 1953. In this transferee proceeding, however, only the deficiencies relating to the first two years are involved. This follows from the fact that there was no showing that Metropolitan transferred any assets to petitioner during the fiscal year ending on February 28, 1953. This is of little significance since the Tax Court found that the petitioner was a transferee of at least $7,357.54 of Metropolitan's assets in the two preceding fiscal years. 42 T.C. 669.

5. Now Int.Rev.Code of 1954, § 6501(c).

6. Now Int.Rev.Code of 1954, § 7454(a).

sessed at any time. Central to this decision was the Tax Court's treatment of certain undisputed facts. The parties stipulated that during its fiscal years 1951 and 1952 Metropolitan made purchases of airline passenger tickets amounting to $26,395.37, and that, although the ticket cost was charged to "Air Freight," one of Metropolitan's ledger expense accounts, the tickets were never used for air travel. Instead, the tickets were redeemed shortly after they were purchased and the refund checks were deposited in either the personal bank account of the petitioner, or the joint account of the petitioner and his wife, or the personal account of Kurtin. It is undisputed that at least $7,357.54 of the amount funneled out of Metropolitan by means of this ticket redemption ruse was received and retained by the petitioner during the fiscal years ending February 28, 1951 and February 29, 1952. In the Tax Court the petitioner offered evidence to show that the funds so received by him were additional compensation to him, or were used by him to make gifts to employees of various trucking and airline companies in order to "generate business" for Metropolitan. The charge to the "Air Freight" account, the petitioner argued, was simply a camouflage designed to circumvent the prohibitions of the Civil Aeronautics Board relating to rebates and unfair competition. Petitioner argued before the Tax Court that Metropolitan's returns for its fiscal years 1951 and 1952 were not false or fraudulent with intent to evade tax because the charges to the "Air Freight" expense account were properly deductible as ordinary and necessary expenses of an air freight forwarding business, cf. Lilly v. Commissioner of Internal Revenue, 343 U.S. 90, 72 S.Ct. 497, 96 L.Ed. 769 (1952), and that Metropolitan's tactics, while devious, did not constitute fraud because the deduction taken by Metropolitan for the sums transferred to petitioner was allowable and simply misnamed.

The Tax Court concluded that "charging . . . the airline passenger tickets to 'Air Freight,' in itself a false representation, plus the failure to credit the amounts received in redemption of such tickets back to the corporation" was "sufficient of itself to render the returns, filed by or on behalf of Metropolitan for these two years, false or fraudulent with intent to evade tax." 42 T.C. 666. The Tax Court went on to say that inasmuch as this evidence established a prima facie case of fraud, the burden of going forward shifted to the petitioner to show that the money received by petitioner when the airline tickets were redeemed was, as claimed, used to generate Metropolitan's business, or to pay petitioner additional compensation, and that the petitioner had failed to meet this burden.

Having failed below to show that the funds channeled into his hands through the ruse of purchasing and redeeming airline tickets were either additional compensation or were spent by him in the course of Metropolitan's business, the petitioner has changed the posture of his case before this court. He now urges that the Commissioner failed to prove "the returns filed by Metropolitan reflected the cost of these tickets as a deduction from income or that any underpayment (deficiency) of income tax on the part of Metropolitan for the taxable years involved was attributable to the cost of the airline tickets." This confusing language boils down to either one of two claims: The petitioner may be arguing that Metropolitan cannot be said to have filed a fraudulent return with intent to evade tax because the company took no deductions for the amounts charged to "Air Freight," or, alternatively, petitioner may be arguing that, even though Metropolitan did take the deductions, the Commissioner did not establish that the deductions proximately caused the deficiencies asserted. Neither of these possible interpretations of petitioner's argument have merit.

In arguing that the Commissioner did not show that Metropolitan deducted the amounts charged to "Air Freight," petitioner benefits from the fact that the corporate tax returns filed

by Metropolitan are not sufficiently detailed to permit this issue to be resolved by an examination of the returns, and he also benefits from the fact that Metropolitan's original books and records have vanished. It is also true that the stipulated facts establishing the airline ticket ruse do not conclusively establish that a deduction was taken for the sum of these purchases, since Metropolitan might have consistently credited the Air Freight account with the amounts equal to the sums received when the tickets were redeemed. But this argument ignores the crucial circumstance that petitioner argued below that Metropolitan had in fact taken such a deduction and that the deduction was justified as it reflected an ordinary and necessary expense of Metropolitan's business. It was possible for the Tax Court to believe the petitioner's testimony that such sums were deducted while disbelieving petitioner's claim that they reflected sums spent for gifts and gratuities and for additional compensation. Thus, the Tax Court's conclusion that Metropolitan filed false or fraudulent returns with intent to evade taxes for fiscal 1951 and fiscal 1952 is supported by petitioner's uncontradicted testimony in the court below and the stipulations of fact. We hold this evidence was sufficient to discharge the Commissioner's burden on the issue of fraud. Surely the fact that the stipulated facts played a key role in establishing the Commissioner's case is irrelevant. A great many tax cases are litigated on stipulations of fact. If such stipulations establish the Commissioner's burden of proof, he need do no more. See Jaffee v. Commissioner, 18 B.T.A. 372, aff'd on other grounds, 45 F.2d 679 (2 Cir. 1930).

■ Short shrift can be given to the alternate interpretation of petitioner's argument that the Commissioner failed to prove that the fraudulent return filed by Metropolitan proximately caused the deficiency asserted against Metropolitan. The short answer to this contention is that the Commissioner is not required to show that the fraud relied on to permit the assessment after the three year limitation period has elapsed is responsible for the entire deficiency asserted. The Commissioner need only show that part of the asserted deficiency is due to the fraud on which the Commissioner relies. Mensik v. Commissioner of Internal Revenue, 328 F.2d 147, 150 (7 Cir.), cert. denied, 379 U.S. 827, 85 S.Ct. 55, 13 L.Ed. 2d 37 (1964). In this case the Tax Court found as a fact that part of the deficiency asserted was due to fraud. 42 T.C. 665. Since the only fraud relied upon was the airline ticket ruse it follows that at least part of the deficiency asserted was due to this fraud, and thus the assertion of the entire deficiency was proper.

■ Since the stipulated facts, plus petitioner's testimony in the court below, satisfactorily establish that Metropolitan filed false or fraudulent returns with intent to evade tax it is unnecessary to consider petitioner's further contention that evidence of his prior criminal conviction, based on his plea of guilty, cannot, standing alone, discharge the Commissioner's burden of proving fraud in a case involving civil tax liabilities.[7] Petitioner's argument assumes that his prior conviction was introduced into evidence in order to foreclose by collateral estoppel the issue of fraud. It seems clear, however, that petitioner's plea of guilty to a criminal charge of filing a false or fraudulent return for the fiscal year ending February 28, 1951 was offered only as an evidentiary admission. As such it was admissible, although not conclusive, on the issue of fraud. United States v.

---

7. On May 9, 1957, both Kreps and Kurtin were indicted. The indictment contained four counts. Subsequently, they both pleaded guilty to counts one and three of the indictment, which charged them (1) with wilfully and knowingly attempting to evade and defeat a large part of the taxes owed by Metropolitan for the fiscal year ending February 28, 1951 by filing a false and fraudulent return in violation of Section 145(b) of the 1939 Code, and (2) with wilfully and knowingly aiding and assisting in the preparation of a false or fraudulent return for that taxable year in violation of Section 3793(b) (1) of the 1939 Code.

Buschman, 208 F.Supp. 531 (E.D.N.Y. 1962).

Petitioner argues that the Commissioner failed to discharge the burden of proving fraud placed on him by section 1112 of the 1939 Internal Revenue Code. To the contrary, the stipulated facts, plus petitioner's testimony that Metropolitan took deductions for the amounts spent on airline tickets, was sufficient to present a prima facie case of fraud with intent to evade tax. Therefore, at this point in the Tax Court proceedings the burden of going forward with the evidence shifted to the petitioner, and, in the opinion of the Tax Court, it is this latter burden that petitioner failed to discharge. This conclusion is based on substantial evidence and cannot be disturbed. See Lessmann v. Commissioner of Internal Revenue, 327 F.2d 990, 993 (8 Cir. 1964).

Petitioner might have more subtly argued that even though the Commissioner had satisfied the burden of proof imposed by section 1112 of the 1939 Internal Revenue Code, the lower court failed to find that the Commissioner proved fraud by "clear and convincing" evidence. The requirement that the Commissioner's proof of fraud must be "clear and convincing" is a judicially announced doctrine that derives from the common law rules regulating the proof of fraud in civil cases rather than from the section of the Internal Revenue Code placing the burden relative to fraud on the Commissioner. See 9 Wigmore, Evidence § 2498 (3d ed. 1940). The requirement is less rigorous than the standard applied in criminal trials and is more strict than the usual civil requirement that there need be only a preponderance of the evidence in favor of the proponent's position. Although it is clear that the Tax Court placed the burden of proving fraud on the Commissioner it is less clear that it weighed the evidence of fraud against the "clear and convincing" standard. And there is some authority for the proposition that even if the evidence presented to the lower court supports the inference of fraud an appellate court must reverse a finding of fraud if it cannot be sure that the lower court applied the appropriate legal standard to the evidence. See Carter v. Campbell, 264 F.2d 930, 941 (5 Cir. 1959). We believe petitioner's most persuasive argument to be that even though the lower court properly placed the statutory burden of proving fraud on the Commissioner, and even though the Commissioner's proof supports the inference of fraud, the lower court erred because it did not clearly require the Commissioner to carry this somewhat heavier burden of persuasion.

We are satisfied, however, that this argument does not warrant a reversal of the decision below. The case was tried before an experienced trial judge of the Tax Court; although he did not explicitly advert to the "clear and convincing" standard, that standard is one familiar to judges of the Tax Court and we may fairly assume that it was with reference to this standard that he assessed the Commissioner's evidence. Second, the Carter case was a much stronger case for reversal than the present case, for in Carter the taxpayer was seeking to recover in a district court proceeding certain civil fraud income tax penalties he had paid, and the initial question was whether in the district court where the Commissioner was the respondent he had the burden of proof on the issue of fraud. The appellate court remanded for a new trial in order to resolve its own doubts that the trial court had applied the proper standard. In the present case, on the other hand, the court below was on familiar ground and we do not doubt that the correct rule of law was applied. Finally, even though we might feel constrained to reverse if the evidence bearing on the issue of fraud was in equipoise (for in such a case the degree to which the Tax Court felt it must be persuaded by the Commissioner's evidence would be crucial to the result) in this case the Commissioner's prima facie case of fraud was controverted only by the petitioner's

claim that the sums proved to have been deducted were properly deductible. The lower court, relying on the testimony of individuals whom petitioner alleged received large gifts, that the gifts had not in fact been received, disbelieved petitioner. On this state of the evidence a reversal of the judgment below would serve no useful purpose. The evidence so clearly established the inference of fraud that had the "clear and convincing" standard been explicitly applied the result could not possibly have been different.

■ As we conclude that there is no limitation on the period within which the deficiency against Metropolitan may be asserted the one year limitation on the assertion of a deficiency against petitioner, as a transferee of Metropolitan, also does not apply. The Commissioner's assertion of the deficiency was therefore timely. Bartmer Automatic Self Service Laundry, Inc. v. Commissioner, 35 T.C. 317 (1960).

■ We now turn to petitioner's second contention. Section 1119(a) of the 1939 Internal Revenue Code [8] places the burden of proof on the Commissioner "to show that a petitioner is liable as a transferee of property of a taxpayer." The interpretive gloss on this provision indicates that in order to discharge this burden the Commissioner must establish that it would be bootless to proceed further against the taxpayer-transferor; that there was a gratuitous transfer of assets from the taxpayer-transferor to the alleged transferee and that the transferor was either insolvent at the time of,[9] or was rendered insolvent by, that transfer. Bartmer Automatic Self Service Laundry, Inc. v. Commissioner, supra. Petitioner argues that the Commissioner has not sustained the burden of proof on this issue of transferee liability because the Commissioner did not prove Metropolitan was insolvent at the time of the transfers by Metropolitan to petitioner or was rendered insolvent by them. For purposes of this argument petitioner effectively concedes that the Commissioner has established that Metropolitan gratuitously transferred at least $7,357.54 to him during the fiscal years ending February 28, 1951 and February 29, 1952. Petitioner does not convince us that the Commissioner should be required to proceed further against the taxpayer-transferor.

In order to understand petitioner's contention it is necessary to set out in some detail the basis for the Tax Court's conclusion that Metropolitan was insolvent at the time of, or rendered insolvent by, the transfers. The Tax Court found that according to the skeleton balance sheets attached by Metropolitan to its tax returns for the fiscal years ending February 28, 1951 and February 29, 1952 the company's assets exceeded its liabilities by $1,701.99 in the first year and by $10,985.34 in the second year. However, the Tax Court went on to take into consideration the deficiencies in tax liability later asserted by the Commissioner for each of these fiscal years. These deficiencies, exclusive of interest or penalties, amounted to $16,606.86 for the fiscal year ending February 28, 1951, and $7,151.55 for the fiscal year ending February 29, 1952. Of course, this tax liability was not reflected on the balance sheets attached to Metropolitan's original returns, but the Tax Court concluded that it must be included and applied retroactively. By so doing the small excess of assets over liabilities in each of the years was erased and Metropolitan's liabilities exceeded its assets by $14,884.87 in the 1951 fiscal year and by $12,773.07 in the 1952 fiscal year. This result triggered petitioner's liability as a transferee.

8. Now Int.Rev.Code of 1954, § 6902(a). The substantive provisions relating to transferee liability are found in Section 311(a) of the 1939 Code. See note 2 supra.

9. Both parties assume the critical date at which to test Metropolitan's solvency is at the end of each fiscal year in question even though transfers were made at various times during both years.

In his petition to us the petitioner argues that this approach failed to disclose Metropolitan's "true financial condition" for the balance sheets attached to the returns in 1951 and 1952 did not reflect Metropolitan's accounts receivable, and if the balance sheets are to be modified so as to set forth unpaid tax liabilities they ought also to be modified on the asset side so as to show outstanding receivables. Petitioner contends that, even though Metropolitan's books and records were kept on a cash receipts and disbursements method of accounting, its accounts receivable should be included as assets of the company on its corporate balance sheet. Furthermore, petitioner argues that a proper estimate of the worth of all its assets establishes that Metropolitan was not insolvent, or was not rendered insolvent by the transfers to the petitioner, during the fiscal years ending February 28, 1951 and February 29, 1952.

 Before we can reach the contention that a cash-basis taxpayer's accounts receivable should be considered in determining whether the taxpayer was insolvent as of a certain date we must decide whether the question of insolvency is to be dealt with in the bankruptcy or the equity sense of the term. The Internal Revenue Code provides no guidance, and most courts have simply announced, without pausing to consider in which sense they used the term, that the Commissioner must prove the taxpayer-transferor was insolvent. Indeed, this seems to have been the approach of the lower court in the present case. Which of these insolvency tests should be imported into the interpretive gloss on the transferee liability sections of the Code largely depends on the purpose these sections were designed to serve. The equity test of insolvency equates insolvency with a lack of liquid funds, or the inability to pay one's debts in the ordinary course of business as the debts mature. This test normally has the lower threshold of compliance; it may be met by companies in temporary financial difficulty which are not on the verge of failure. The bankruptcy test of insolvency, on the other hand, focuses on the balance sheet of a company at discreet intervals of time in order to determine whether the company's liabilities exceed its assets; it will typically be met by companies in serious financial difficulty. The purpose of the transferee provisions of the Internal Revenue Code is to enable the Commissioner to collect from the transferee by means of a summary procedure the tax owed by the taxpayer-transferor. Doman v. Moe, 183 F.Supp. 802, 805 (S.D.N.Y.1959). Before the Commissioner may proceed against the transferee he must meet certain strict conditions designed to protect transferees from suit when the transferor is still capable of satisfying its tax liabilities. For example, it must be shown that it is bootless for the Commissioner to proceed against the transferor. Bartmer Automatic Self Service Laundry, Inc. v. Commissioner, supra. This indicates that the transferee liability provisions of the Code are limited in their application to cases in which the taxpayer-transferor suffers from more than mere illiquidity.[10] This suggests that we should import into the transferee provisions of the Code the bankruptcy sense of insolvency. Therefore, we hold that the Commissioner must prove that the taxpayer-transferor was insolvent in this sense in order to discharge the Commissioner's burden under section 1119(a) of the 1939 Code. The few cases that have raised this issue are not inconsistent with this conclusion. See Stoumen v. Commissioner, 27 T.C. 1014 (1957).

10. To the contrary it might be argued that the transferee is adequately protected by the requirement that the Commissioner show that it is useless to proceed further against the transferor and that our choice between the alternative tests of insolvency should not be dictated by a desire to protect the transferee. We disagree on the ground that insolvency in the bankruptcy sense will often be the best indication of whether further proceedings against the taxpayer are useful.

Although the lower court never explicitly adverted to the problem, its conclusion that Metropolitan was insolvent reflects the balance sheet approach we now hold to be the correct approach. But the Tax Court did not accept the skeleton balance sheets Metropolitan filed with its tax returns for its fiscal years 1951 and 1952, which indicated a small excess of assets over liabilities in each year. Instead it went on to increase the liability side of the balance sheet by the amount of Metropolitan's tax liability for those years as redetermined by the Commissioner in the deficiency notice dated June 27, 1958. At this juncture the petitioner does not contest this increase in Metropolitan's liabilities, but he does contend that in deciding whether Metropolitan was insolvent its accounts receivable should be included on the asset side of the balance sheet.

In passing on this argument, the treatment accorded similar assets by bankruptcy courts seems highly relevant. If bankruptcy courts always included the accounts receivable of a cash basis taxpayer on the asset side of the balance sheet, we should be inclined to do the same. But an examination of the decisions in bankruptcy law indicates that years of experience have produced no such black-letter rule. Bankruptcy courts have not set their faces against arguments that such items should be considered; rather they have concentrated on the practical problem of estimating how much could be realized from such assets when they were converted into cash. For example, bankruptcy courts have not appraised accounts receivable at their face value but have valued them according to the prospect of their collectibility as of a critical date. And when it was doubtful that the evidence tending to prove the accounts receivable were valuable enough to render the bankrupt solvent courts have felt free to exclude accounts receivable altogether. Field v. Harrison, 18 F.2d 729 (2 Cir. 1927).

We do not regard this learning from bankruptcy law as conclusive. We do believe that it aids us in marking out the boundaries of the Commissioner's prima facie case. We conclude that when the Commissioner seeks to invoke the transferee provisions of the Internal Revenue Code, and when a critical element of his case is proof of a cash-basis taxpayer-transferor's insolvency, the Commissioner, in order to have taxpayer-transferor's financial condition reflected, may rely on the cash basis books of account kept by the transferor and may add to the liability side any additional tax liability arising from a recomputation of the taxpayer-transferor's tax. If this computation indicates the taxpayer is insolvent in the bankruptcy sense the burden of going forward shifts to the petitioner to establish that there are other assets, not represented on the balance sheet, which should be included— and the value of those assets. In the present case, for example, once the Commissioner introduced Metropolitan's balance sheets and added the liability due to the recomputed tax, the burden of going forward shifted to the petitioner to show that Metropolitan had accounts receivable not represented on its books and that at the critical dates, the conclusion of each fiscal year, they amounted to enough to make Metropolitan solvent. In the present case the petitioner failed to discharge this burden and thus the Tax Court properly held for the Commissioner on the basis of the latter's computations.

The petitioner's only proof of Metropolitan's accounts receivable was the use of trial balances, that is, rough attempts to reconstruct the balance sheet of Metropolitan over a period of time. The only trial balances introduced into evidence related to Metropolitan's financial condition as of February 28, 1952, April 30, 1952, and May 31, 1952. Petitioner contends that these figures establish that Metropolitan's assets exceeded its liabilities— including the recomputed tax liability— on each of the above dates. We agree

with the lower court that this evidence was not sufficient to sustain petitioner's burden of going forward. First, it is difficult to determine how the trial balances were constructed. The Tax Court termed the loose leaf ledger sheets from which the balance figures were drawn "confusing and inadequate" and we agree with that characterization. Second, it does not appear that the estimated accounts receivable were subjected to any discount to reflect collection prospects or collection costs. Finally, the petitioner's computations deviate markedly from the figures that are available for the other months of Metropolitan's short life; for example, according to the petitioner's reconstructed calculations, in the month of March 1952, Metropolitan's total expenses for air freight and trucking were only 25 per cent of sales, while in the three prior years these expenses averaged about 75 per cent of sales. Petitioner's computations do show a temporary solvency during that month—the period immediately after the close of the second fiscal year in question. However, these computations are so inconsistent with the general experience of Metropolitan as indicated by the balance sheets attached to the returns Metropolitan filed for its fiscal years 1951 and 1952 as to cast great doubt on the validity of the petitioner's trial balance computations.

We hold that the petitioner did not sustain his burden of establishing that Metropolitan's accounts receivable should be included as assets in determining whether Metropolitan was insolvent at the conclusion of each of the two fiscal years in question. The Tax Court properly concluded that Metropolitan was insolvent after the transfers of its assets in fiscal 1951 and after the transfers of its assets in fiscal 1952. This conclusion established that petitioner, the transferee of assets, is liable for Metropolitan's unpaid taxes to the extent of the assets transferred.

The judgment of the Tax Court is affirmed.