GEORGE C. O'BRIEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
O'Brien v. Commissioner
Docket No. 5964-75.
United States Tax Court
T.C. Memo 1976-388; 1976 Tax Ct. Memo LEXIS 20; 35 T.C.M. (CCH) 1755; T.C.M. (RIA) 760388; December 16, 1976, Filed Max A. Reinstein and David Davidson, for the petitioner. Alan M. Jacobson, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined a deficiency in Federal income taxes for the taxable year of the petitioner ended December 31, 1968, as follows: [1]
Addition to Year Ended
Deficiency
Tax § 6653(b)
December 31, 1968
$112,052.00
$56,026.00
*21 The issues remaining for decision are, as follows: (1) Whether petitioner George C. O'Brien understated his gross income for the 1968 taxable year and if so, whether the statute of limitations bars the assessment and collection of the deficiency and the tax determined to be due by respondent. (2) Whether any part of the underpayment of taxes for the taxable year involved in this proceeding is due to fraud, within the meaning of section 6653(b), on the part of the petitioner. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner, George C. O'Brien, filed his Federal income tax return for the taxable year 1968 with the District Director of Internal Revenue, Chicago, Illinois. At the time the petition was filed, petitioner resided in Highland Park, Illinois. During 1968, petitioner was president and owned 95 percent of the stock of O'Brien Gear and Machine Company, (hereinafter referred to as the corporation). The corporation was organized in 1959 *22 under the laws of the State of Illinois. Its principal office was in Highland Park, Illinois. The corporation filed a timely income tax return for its fiscal year ended September 30, 1968. The books and records of the corporation were maintained using the accrual method of accounting. The corporation had accumulated or current earnings and profits for the fiscal year ended September 30, 1968, of $272,687.93. The corporation's books and records understated gross sales for the 1968 fiscal year in the amount of $150,000. These books and records indicate that there were three gross sales accounts. The only postings to the accounts receivable account were from these gross sales accounts. In October 1967, November 1967, February 1968 and May 1968, the accounts receivable account exceeded the total gross sales by $60,000, $30,000, $30,000 and $30,000, respectively, thereby leaving the books with $150,000 more debits than credits. The "cash in bank" account in the general ledger of the corporation contained four credit entries, which correspond exactly to the months and amounts in which the accounts receivable account exceeded total gross sales. The entries were, as follows: *23 Date
Amount
10/31/67
$ 60,000.00
11/30/67
30,000.00
2/29/68
30,000.00
5/31/68
30,000.00
Total
$150,000.00
The effect of these four credit entries was to correct the difference of $150,000 more debits than credits on the books of the corporation, and to create a difference between the corporation's actual balance in its bank account and the general ledger "cash in bank" account of $150,000. During 1968, the corporation maintained a checking account at the First National Bank of Highland Park, Highland Park, Illinois. The only authorized signatures on the corporation's checking account were petitioner, and his mother, Hazel O'Brien. Between June and September 1968, petitioner signed 24 checks made payable to cash on this checking account. These checks were prepared by Howard Williams, the comptroller of the corporation during the year in issue. No entries were made on the corporation's books with respect to these checks. They were removed in reverse numerical order from a check register that the corporation did not use until 1971. The check number, date, amount and date that the check cleared the bank are, as follows: Check Number
Date of Check
Bank Clearing Date
Amount
35597
6/28/68
6/28/68
$ 5,000.00
35596
6/29/68
7/02/68
5,000.00
35595
7/06/68
7/06/68
5,000.00
35594
7/1 2/68
7/12/68
5,000.00
35593
7/13/68
7/13/68
5,000.00
35592
7/19/68
7/19/68
6,000.00
35591
7/20/68
7/20/68
9,0 00.00
35590
7/27/68
7/27/68
5,000.00
35589
7/31/68
7/31/68
5,000.00
35588
8/09/68
8/09/68
7,500.00
35587
8/10/ 68
8/10/68
7,500.00
35586
8/16/68
8/16/68
7,000.00
35585
8/17/68
8/17/68
8,000.00
35584
8/23/68
8/23/68
5,500 .00
35583
Unknown
8/24/68
4,500.00
35582
8/28/68
8/30/68
8,500.00
35581
8/31/68
8/31/68
6,500.00
35580
Unknown 9/06/68
5,000.00
35579
9/13/68
9/13/68
7,500.00
35578
Unknown
9/14/68
7,500.00
35577
9/20/68
9/20/68
8,000.00
35576
9/21/68
9/21/68
7,000.00
35575
9/27/68
9/27/68
5,500.00
35574
9/28/68
9/28/68
4,500.00
Total $150,000.00
*24 Petitioner personally endorsed and cashed 11 of these checks and received cash from each check, totaling $70,000. Howard Williams endorsed and cashed an additional 11 of these checks, totaling $70,500. It could not be determined who cashed the two remaining checks, totaling $9,500. The net effect of the cashing of these checks, without recording them on the corporation's books, was to reconcile the $150,000 difference between the balance in the corporation's bank account and the understated balance in the corporation's general ledger "cash in bank" account. The corporation filed a timely Federal income tax return for the fiscal year ended September 30, 1968. No portion of the $150,000 was reported on its return. Petitioner's Federal income tax return for the taxable year 1968 was filed on April 12, 1969, and the return was prepared on the cash basis method of accounting. On the return petitioner reported $70,000 in income, which was his salary from the corporation. No portion of the 24 checks totaling $150,000 was reported on his return. On April 15, 1975, respondent mailed a notice of deficiency to petitioner in which respondent determined that petitioner had $150,000 *25 additional income for the taxable year 1968, and that the underpayment of tax was due to fraud. During the taxable year 1968, petitioner received the sum of $150,000 as a constructive dividend from the corporation. Petitioner fraudulently, with an intent to evade tax, failed to report the receipt of such in his Federal income tax return for the taxable year 1968. OPINION During 1968, petitioner was president and controlling stockholder of O'Brien Gear and Machine Company. During the corporation's 1968 fiscal year, its books and records understated gross sales by $150,000. No portion of this $150,000 was reported either in the corporation's income tax return for its fiscal year ended September 30, 1968, or in the petitioner's income tax return for the taxable year 1968. Between June and September 1968, petitioner signed 24 checks, totaling $150,000 drawn on the corporation's bank account. Petitioner and/or the comptroller of the corporation endorsed these checks and cashed them at the First National Bank of Highland Park. The books and records of the corporation do not reflect the withdrawal of this $150,000. Petitioner did not present any credible proof that this sum *26 was used for the benefit of the corporation. Respondent determined that the $150,000 is includable in petitioner's 1968 income as constructive dividend income from the corporation. Petitioner claims he did not receive any of the $150,000 and it is not includable in his 1968 income, and that the statute of limitations bars the assessment. The assessment of the tax was not made within three years after the return was filed as prescribed in section 6501(a). However, respondent has determined that petitioner filed a false or fraudulent return with intent to evade tax. Section 6501(c)(1) provides, as follows: (1) False return.--In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time. With respect to the issue of fraud, the burden of proof is on the respondent. This proof must be clear and convincing. Section 7454(a); Kreps v. Commissioner,351 F.2d 1 (2nd Cir. 1965), affg. 42 T.C. 660 (1964); Rule 142 Tax Court Rules of Practice and Procedure. In sustaining the burden of proof, respondent is not required *27 to prove the precise amount of the underpayment resulting from fraud, but only that "any part" of the underpayment is attributable thereto. Estate of W. Y. Brame,25 T.C. 824 (1956), affd. per curiam 256 F.2d 343 (5th Cir. 1958). The facts in this case fully support a finding of fraud with intent to evade tax.
The facts indicate a careful scheme to understate the corporation's gross income and direct money to petitioner. Entries were made in the corporation's books and records that understated gross sales and created $150,000 more debits than credits. This $150,000 difference was reconciled with four false credit entries in the "cash in bank" account in the general ledger, in the same months and amounts that the accounts receivable account exceeded the gross sales account. Petitioner and Mr. Williams reconciled the $150,000 difference between the bank account and the understated "cash in bank" account in the general ledger by withdrawing $150,000 from the bank account over a three-month period. There were no entries on the corporation's books and records of the 24 checks, totaling $150,000; and the checks were removed in reverse order from a check *28 register the corporation did not use until 1971. All these acts were deliberate and the likely effect was to conceal the wrongdoing. Petitioner failed to explain the bank withdrawals and his denials of taking any checks or money is in conflict with the evidence. Petitioner and his mother had complete control over the corporation's checking account. Petitioner, as the controlling shareholder who signed all the checks, had an obligation to account for all the checks and he failed to do so. Petitioner signed 24 checks prepared by Howard Williams, the corporation's comptroller, drawn on the corporation's checking account, totaling $150,000. The head teller at the First National Bank of Highland Park testified that petitioner personally cashed 11 of the 24 checks drawn on the corporation's account, totaling $70,000. Although petitioner denied it, the evidence clearly established that he received at least $70,000 of the total. There was testimony describing a scheme that was utilized in 1967, whereby Howard Williams prepared checks on the corporation's account which were endorsed by the corporation's office manager, who handed the money to petitioner. It is very probable that *29 this same procedure was followed with Howard Williams in 1968. Petitioner stated that he had no knowledge of the understatement of gross sales or the fact that $150,000 worth of checks payable to cash were cashed in 1968. He testified he relied completely on Howard Williams for keeping the books and records and preparing checks.The Court is unwilling to believe petitioner's testimony. As a businessman, he most certainly would question the purpose of $150,000 worth of checks payable to cash presented for him to sign over a period of three months. Petitioner did not present any evidence at the trial to indicate that Mr. Williams embezzled any money from the corporation. All of these facts, coupled with the fact that petititioner never made any attempt whatsoever to explain the withdrawals, and was unable to prove that money was used for the benefit of the corporation, lead to the conclusion that Mr. Williams and petitioner were both participants in a scheme to understate the corporation's income and direct the money to petitioner. Furthermore, with regard to his reliance on Mr. Williams in preparing his 1968 Federal income tax return, petitioner personally cashed at least $70,000 *30 worth of checks over the threemonth period. He must have been aware of the purpose for which these funds were to be used. The claim that the omission of income was the result of negligence by the return preparer has previously been held to be an invalid defense. Harber v. Commissioner,249 F.2d 143 (6th Cir. 1957), affg. a Memorandum Opinion of this Court, cert. denied 355 U.S. 955. Since the Court has found that the omission of income is due to fraud, section 6501(c)(1) is applicable and the statute of limitations does not bar the assessment and collection of the deficiency. This finding of fraud likewise supports the imposition of the addition to tax provided in section 6653(b). As to the amount of the deficiency, the burden of proof is on the petitioner to rebut the presumption of correctness attaching to respondent's determination. Welch v. Helvering,290 U.S. 111 (1933). Petitioner has failed to meet that burden. Accordingly, the deficiency and additions to the tax as determined by respondent in the notice of deficiency must be sustained. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩