ROBERTO and ANGELA INSOLERA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Insolera v. Commissioner
Docket No. 858-76.
United States Tax Court
T.C. Memo 1977-424; 1977 Tax Ct. Memo LEXIS 17; 36 T.C.M. (CCH) 1734; T.C.M. (RIA) 770424; December 15, 1977, Filed *17 Donald Israel, for the petitioners. Peter W. Mettler, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALTY, Judge: Respondent determined the following deficiencies and additions to tax. Additions to Tax Year
Deficiency
$ 6653(b)
1968
$15,955.72
$7,977.86
1969
11,426.25
5,713.13
The questions remaining for decision are as follows: (1) Whether respondent correctly determined that petitioners failed to report income from Dr. Angela Insolera's practice of medicine for the taxable years 1968 and 1969. (2) Whether respondent correctly determined that petitioners are liable for the additions to the tax for fraud pursuant to section 6653(b). [1] FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time of the filing of the petition herein, petitioners resided in Long Beach, New York. Petitioners filed their Federal income tax returns for the years in issue with the District Director's office, Internal Revenue Service, Brooklyn, New York. Both petitioners are medical *18 doctors, having graduated from Rome University, Italy. Petitioners took a residency in pediatrics and became members of the Italian Board of Pediatrics. Petitioners practiced medicine in Rome, Italy, until December 1962. In 1963 and 1964, both petitioners accepted a two-year contract as medical officers with the English government in Uganda, East Africa. While in Africa, Dr. Angela Insolera took and passed the E.G.F.M.G. examination required of all foreign medical graduates, as the first step to practice medicine in the United States. Dr. Roberto Insolera took, but did not pass, the E.G.F.M.G. examination. In 1965, soon after their arrival in the United States, both petitioners interned for one year at Vassar Brothers Hospital in Poughkeepsie, New York. Dr. Angela Insolera, hereinafter referred to as Dr. Insolera, obtained a medical license from the State of Pennsylvania on February 9, 1966, and by reciprocity from the State of New York on April 19, 1966. In 1966, Dr. Insolera was employed as a house physician by the Long Beach Memorial Hospital, Long Beach, New York. The following year she continued to work for the hospital and began to do some private practice. Her first *19 full year of private practice was 1968. During 1968 and 1969, petitioners maintained 12 checking and savings accounts at various banks. During 1968 and 1969, petitioners made deposits into the accounts set forth below in the following amounts: Total Deposits Account
1968
1969
National Bank of North America
#719-0708-8009
$22,691.37
$ 5,489.00
National Bank of North America
#119-11-5975
51,675.30
39,418.67
First National City Bank
#68920786
12,040.00
17,403.77
Chase Manhattan Bank
#092-0-051893
2,962.00
Fall Kill Bank & Trust Co.
#814334
13,421.56
First National City Bank
#09770183
12,796.18
5,065.30
The Dime Savings Bank
#180414
14,232.00
Central Federal Savings & Loan
Association #1060837
500.00
19,697.09
State of New York Bank
#814334
16,873.58
Chemical Bank N.Y. Trust Co.
#206-2010043
3,320.64
Franklin National Bank
#36-34222
400.00
Marine Midland Grace Trust
Co. #19-10230-5
1,406.00
Total
$130,318.41
$109,074.05 During 1968 and 1969, the petitioners received loans from the following banks in the amounts set forth below: Amount of Loan Account
1968
1969
National Bank of North America
#719-0708-8009
$ 640.00
National Bank of North America
#119-11-5975
5,300.00
First National City Bank
#09770183
5,753.00
National Bank of North America
$ 3,800.00
Total
$11,693.00
$ 3,800.00
During *20 the taxable years 1968 and 1969, petitioners made the following interbank transfers and cash receipts: Amount Account
1968
1969
National Bank of North America
#719-0708-8009
$ 3,100.00
$ 3,800.00
National Bank of North America
#119-11-5975
12,900.00
First National City Bank
#68920786
7,940.00
6,500.00
Fall Kill Bank
#814334
6,000.00
Dime Savings Bank
#180414
11,600.00
State of New York Bank
#814334
13,000.00
Chase Manhattan Bank
#092-0-051893
1,000.00
1,000.00
Central Federal Savings & Loan
Association
500.00
Fall Kill Bank & Trust Co.
1,000.00
2,000.00
Total
$44,040.00
$26,300.00
The amount of petitioners' unexplained bank deposits, as determined by respondent, for the taxable years 1968 and 1969 is as follows: 1968
1969
Total Deposits
$130,318.41
$109,074.05
Less: Loans
11,693.00
3,800.00
Interbank Transfers and
Cash Redeposits
44,040.00
26,300.00
Net Deposits
$ 74,585.41
$ 78,974.05
Gross Receipts Reported
per Return
47,060.54
55,235.00
Unexplained Bank Deposits
$ 27,524.87
$ 23,739.05
During the years in issue petitioners did not receive any gifts, inheritances or nontaxable or excludable income or other assets. Petitioners did not claim any cash hoard as of January 1, 1968. Petitioners failed to keep any records from which the correct *21 income could be ascertained. Dr. Angela Insolera destroyed her patient memo books while the criminal tax investigation was pending. Respondent determined that petitioners fraudulently, with intent to evade tax, understated their taxable income for the years 1968 and 1969 by $27,524.87 and $23,739.05, respectively. OPINION Petitioners practiced medicine in Italy for a number of years. Thereafter, they both accepted a two-year contract with the English government to practice medicine in Uganda, East Africa. While in Africa, Angela took and passed the E.G.F.M.F. examination, required of all foreign doctors, as the first step to practice in the United States. Roberto took, but did not pass the exam. In 1965, both petitioners entered the United States and interned for one year at Vassar Brothers Hospital in Poughkeepsie, New York. In 1966, Angela practiced as a house physician with the Long Beach Memorial Hospital in Long Beach, New York. In 1967, Dr. Insolera continued to work for the hospital and began to practice privately. During the years in issue, Angela maintained a full-time private practice. Robert never practiced medicine in the United States. Respondent determined *22 that petitioners fraudulently, with the intent to evade tax, understated their taxable income in 1968 and 1969 by $27,524.87 and $23,739.05, respectively. Since petitioners failed to keep or produce records from which correct income could be ascertained, the respondent is empowered to resort to other and less direct methods of proving income. Epstein v. United States,246 F.2d 563 (6th Cir. 1957), cert. denied 355 U.S. 868 (1957). Respondent determined the deficiency by using the so-called bank deposits method of proof, a method long recognized by the courts. Morrison v. United States,270 F.2d 1 (4th Cir. 1959), cert. denied 361 U.S. 894 (1959); Percifield v. United States,241 F.2d 225 (9th Cir. 1957); Reaves v. Commissioner,31 T.C. 690 (1958). The petitioners' income was determined from all known bank deposits and the record indicates that respondent gave petitioners the benefit of the doubt in reconstructing petitioners' income. The burden of proof is on the taxpayer to overcome the presumption of correctness attached to respondent's determination. Welch v. Helvering,290 U.S. 111 (1933). Since petitioners have failed to meet the burden of proof, the Court must sustain respondent *23 on the deficiencies as set forth in the statutory notice. Petitioners failed to include all of Dr. Insolera's medical receipts in income in both 1968 and 1969. The issue which remains is whether this understatement of income was fraudulent within the meaning of section 6653(b). The respondent has the burden of proof with respect to this issue and such proof must be clear and convincing. Section 7454; Rule 142(b), Tax Court Rules of Practice and Procedure; Kreps v. Commissioner,351 F.2d 1 (2nd Cir. 1965); affg. 42 T.C. 660 (1964). In sustaining the burden of proof, respondent is not required to prove the precise amount of underpayment resulting from fraud, but only that "any part" of the underpayment is attributable thereto. Estate of Brame v. Commissioner,25 T.C. 824 (1956); affd. per curiam 256 F.2d 343 (5th Cir. 1958). The Court can find fraudulent intent based upon petitioners' actions and statements. Gano v. Commissioner,19 B.T.A. 518 (1930). It appears from the record that respondent has sustained the burden of proof in establishing that petitioners omitted income with the intent to evade tax during the years in issue. The record shows that petitioners reported all *24 of Dr. Insolera's medicare income (for which they received a Form 1099) but only a small portion of Dr. Insolera's non-medicare patients' income. Petitioners claim that they were ignorant of record keeping requirements for reporting income for Federal income tax purposes. The Court finds it difficult to give much credence to petitioners' claim. Petitioners carefully reported income from medicare, in the amount reported on the Form 1099 sent to petitioners from medicare. These amounts had already been reported to the Internal Revenue Service as having been received by petitioners. However, petitioners substantially underreported on their returns amounts received from other sources. These facts coupled with the fact that petitioners are highly educated individuals lead the Court to believe that petitioners were aware of the proper reporting requirements, but voluntarily and intentionally failed to conform their actions to a known legal duty. These facts indicate petitioners' intent to defraud the Government. United States v. Pomponio,429 U.S. 10 (1976), revg. per curiam and remanding 528 F.2d 247 (4th Cir. 1975). A substantial omission or understatement of income, together with *25 a pattern of repetition over a period of years, although not conclusive, in the absence of a tenable explanation may be considered as strong evidence of fraud. See Holland v. United States,348 U.S. 121 (1954). In this case there was both a substantial understatement of income and a pattern of repetition. The fact that Dr. Insolera did not cooperate with respondent and deliberately destroyed her patient records for the taxable years in question after respondent had commenced a criminal tax investigation is a further indication of fraudulent intent. Estate of Beck v. Commissioner,56 T.C. 297, 365 (1971). Based on all of the facts in the record, the conclusion is inescapable that petitioners fraudulently omitted income during the years in issue with the intent to evade tax within the meaning of section 6653(b). Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩