FREDERICK C. NEWSOME, TRANSFEREE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent MARY H. McINTYRE, TRANSFEREE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Newsome v. Commissioner
Docket Nos. 8695-72, 5272-73.
United States Tax Court
T.C. Memo 1976-75; 1976 Tax Ct. Memo LEXIS 327; 35 T.C.M. (CCH) 335; T.C.M. (RIA) 760075; March 10, 1976, Filed Frederick C. Newsome and Mary H. McIntyre, pro se. William H. Newton, III, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Chief Judge:* In these consolidated cases respondent has determined that petitioners are liable as transferees of Florida Devices, Inc., with respect to the corporation's deficiency in income tax of $2,820.76 for the taxable year ended December 31, 1966, in the following amounts, plus interest as provided by law: Docket No.
Amount
8695-72 (Frederick G. Newsome)
$2,340.00
5272-73 (Mary H. McIntyre)
1,800.00 The only issue for decision is whether the petitioners are liable as transferees for any portion of the unpaid income tax of Florida Devices, Inc. *328 FINDINGS OF FACT Petitioner, Frederick C. Newsome, resided in Vero Beach, Florida, at the time he filed his petition herein. Petitioner, Mary H. McIntyre, resided in Fort Lauderdale, Florida, at the time she filed her petition herein. Florida Devices, Inc. (hereinafter "the corporation") was incorporated under the laws of the state of Florida on July 17, 1962. The primary business activity of the corporation involved the ownership of a patent on a mechanical fruit harvesting apparatus. On July 23, 1966, the corporation entered into an agreement, pursuant to which its patent was assigned to Cooper Manufacturing Company, Inc. (Cooper Manufacturing"), a corporation then being organized by Charles W. Cooper. In consideration for this assignment Florida Devices, Inc. received $20,000 in cash and was also to receive ten percent of the total authorized stock of Cooper Manufacturing. Immediately upon the conclusion of the aforementioned agreement and receipt of the $20,000 cash payment, the corporation's board of directors declared a dividend in the amount of $180 per share. At the time of such dividend, the corporation had a total of 100 shares of stock outstanding, and, accordingly, *329 distributed a total of $18,000 in dividends. Petitioner Newsome then owned 13 shares, and received a dividend of $2,340. Petitioner McIntyre owned 10 shares and received a dividend of $1,800. On September 24, 1968, the corporation filed its Federal income tax return for the calendar year 1966. The return reported taxable income of $18,123.86, consisting principally of the gain on the sale of the patent. The return reported a gross sales price for the patent of $20,000; a cash balance of $1,106.86 was the only asset reflected in the balance sheet as of December 31, 1966. The return reflected income tax due in the amount of $2,987.25 (before late filing penalty and interest), but was filed with a payment of only $1,100. The corporation's cash balance after the $1,100 tax payment was approximately $6. The corporation was dissolved on June 28, 1971, by proclamation of the Governor of the state of Florida, by reason of its failure to file an annual corporation report and its failure to pay capital stock tax under Florida law. In 1972 the respondent's agents performed an audit on the corporation's 1966 return. Respondent determined that there had been an underpayment of the tax due *330 as reported on the return, and investigated the possibility of collecting the deficiency of $2,820.76. Respondent determined that the corporation, which by then had been legally dissolved, had no collectible assets and, accordingly, respondent determined transferee liability against certain of the former stockholders of the corporation, including the petitioners herein, based upon the cash distributions which they had received as dividends after the sale of the patent in 1966. In doing so, respondent determined that the 1966 distributions were made without consideration from the recipients and rendered the corporation insolvent. In April 1973, one of the transferees, Richard Mooney, paid the respondent $1,260 (plus interest and penalty). This amount was applied against the tax liability of the corporation, thus leaving $1,560.76 unpaid. OPINION In 1966, the corporation transferred its principal asset, a patent, for which it received $20,000 in cash. The corporation thereupon distributed nearly all of the cash proceeds as dividends to its stockholders, and essentially became inactive. Such distribution left the corporation without sufficient funds to pay all of its 1966 Federal *331 income tax. Accordingly, respondent proceeded to collect the unapid tax from certain of the corporation's stockholders, including the two petitioners herein, as transferees of the corporation's assets. The potential liability of a transferee for the debts of his transferor (including Federal income taxes) is determined under state law. Commissioner v. Stern,357 U.S. 39 (1958). The applicable state in this case is the law of Florida, which provides that a conveyance of assets by a debtor with the intent to defraud a creditor is fraudulent and void. F.S.A. § 726.01. Thus, the creditor may proceed for recovery against the fraudulently transferred assets in the hands of the transferee. When the legal effect of a conveyance is to defraud creditors, no matter what the actual intention may have been, it is fraud in law. Stelle v. Dennis,140 So. 194 (Fla. 1932). It is well established that a transfer which is made without consideration and which renders the transferor insolvent has the legal effect of defrauding creditors, and subjects the transferee to liability. J. Warren Leach,21 T.C. 70 (1953). Section 6902(a), I.R.C. 1954, *332 provides that in proceedings before this Court the respondent has the burden of proving that petitioner is liable as a transferee of property os a taxpayer, but not to show that the taxpayer is liable for the tax. Petitioners herein have not disputed that the corporation was liable for the tax. Moreover, they do not dispute the fact that they received the amounts distributed to them as dividends without consideration therefor. They do, however, dispute the other element of transferee liability, the alleged insolvency of the corporation resulting from the dividend distribution. As to this issue, we believe that respondent has made a prima facie case that the dividend distribution rendered the corporation insolvent. The corporation's balance sheet as of December 31, 1966, as reported in its 1966 income tax return reflected assets of only $1,106.86. The return also reflected a tax liability of $2,987.25. Thus, the corporation appears to have been insolvent as of December 31, 1966. The minutes of the board of directors meeting at which the dividend was declared reflect that the secretary-treasurer of the corporation reported that a dividend of $180 per share would leave the corporation *333 approximately $700 in cash after provision for income taxes. However, in a 1969 letter to all stockholders, the secretary-treasurer, after reporting an unpaid balance in the corporation's 1966 income taxes, indicated that the 1966 dividend should have been $150 per share instead of $180 per share. This tends to indicate that the dividend left the corporation without sufficient cash to pay the 1966 income tax which had accrued as a result of the sale of the patent. [1] The record contains nothing to indicate that the insolvency which apparently existed at the end of 1966 could have resulted from any additional distributions without consideration subsequent to the dividend distribution. Petitioners contend that in determining that the dividend rendered the corporation insolvent and that the corporation was unable to satisfy *334 the income tax deficiency, respondent has failed to consider certain assets allegedly owned by the corporation. Petitioners contend that under the July 23, 1966, agreement pursuant to which the corporation assigned its patent, the corporation received ten percent of the outstanding stock of Cooper Manufacturing in addition to the $20,000 cash received. They further argue that this interest in Cooper Manufacturing had substantial value as an asset of the corporation, and that, therefore, the dividend did not cause insolvency. The record in this case, however, does not support petitioners' contention. Although it is true that the agreement pursuant to which the corporation assigned its patent contained a provision that the corporation was to receive ten percent of the stock of Cooper Manufacturing, there is nothing in the record to indicate that such stock was ever in fact received. In fact, it is not clear that Cooper Manufacturing was ever even formally incorporated. The July 23, 1966, agreement indicates that Cooper Manufacturing was "being incorporated" and that the ten percent interest in its stock was to be delivered upon incorporation. The balance sheet in the 1966 income tax *335 return of Florida Devices, Inc. does not reflect any assets other than the December 31, 1966, cash balance of $1,106.86. Moreover, even if the Cooper Manufacturing stock had been received by the corporation, the record is devoid of evidence (other than the self-serving testimony of one of the petitioners) that such stock had any value. The only information about Cooper Manufacturing which is discernable from the record is that it was the assignee of the patent from Florida Devices, Inc. Respondent's agent testified that he had served Charles W. Cooper with a levy to collect any retained interest which Florida Devices, Inc. may have had in the patent, but he thought that the prototype of the patented device was in a state of disrepair and that there were no prospects for future development, production or sales. Petitioners argue that Cooper Manufacturing was an operating corporation with employees, machinery, and equipment, in addition to the patent and the above-mentioned prototype and that, therefore, the ten percent interest in Cooper Manufacturing had value. However, they have presented no evidence in the record in support of these contentions. Moreover, the 1966 tax return *336 of Florida Devices, Inc. shows that the alleged interest in Cooper Manufacturing was not reflected in the December 31, 1966, balance sheet, nor was any value assigned to such interest as a part of the proceeds reported from the sale of the patent. The selling price was reported as $20,000, the amount of the cash received. Since respondent has established a prima facie case of transferee liability, petitioners must bear the burden of proving that the corporation held assets sufficient to satisfy the unpaid tax liability. See Louise Noell,22 T.C. 1035, 1042 (1954), modified on other grounds, 24 T.C. 329 (1955), appeal dismissed (8th Cir. 1956). We conclude that they have not done so, and that petitioners must be held liable as transferees of Florida Devices, Inc. Finally, petitioners contend that respondent has failed to establish the amount of the deficiency due from each of them as transferees. They further contend that respondent has previously collected more than the amount of the total unpaid liability of the transferor corporation. It is well established that each transferee is severally liable for the tax liability of the transferor to the *337 full extent of the assets received by him. Phillips v. Commissioner,283 U.S. 589 (1931). Thus, since we have held that both petitioners herein were liable as transferees, respondent may proceed against either of them for collection of an amount equal to the lesser of (i) the assets received as transferee or (ii) the remaining unpaid liability of the transferor, plus interest as provided by law. The record shows that the tax deficiency of the corporation, as of the date of notice of transferee liability against petitioners, was $2,820.76. The record also shows that $1,765.57, composed of $1,260.00 in tax and $505.57 in interest, was subsequently collected from another transferee, Richard Mooney. We are unable to determine from the record that any other amounts have been collected by respondent with respect to the unpaid tax liability of the transferor. Accordingly, we conclude that petitioners have not established that the full amount of the transferor's deficiency has been paid, see Stewart C. Holmes,47 T.C. 622, 627 (1967), and, therefore, both of them are liable as transferees to the extent determined by respondent. Decisions will be entered *338 for the respondent.
Footnotes
*. Pursuant to a notice of reassignment sent to the parties on January 27, 1976, and to which no objections were filed, these cases were reassigned on February 23, 1976, from Judge Austin Hoyt to Judge Howard A. Dawson, Jr.↩ for disposition.
1. Income taxes of the transferor for the year in which assets are transferred without consideration are considered a liability in determining whether insolvency existed, even though the amount of the tax liability is unknown at the time of the transfer. Sidney Kreps,42 T.C. 660, 670 (1964), affd. 351 F. 2d 1↩ (2d Cir. 1965).